SPILMAN & DUFF
vs.
SMITH.

---

## Spilman & Duff *vs.* Smith.

### ERROR TO GARRARD CIRCUIT.

ORD. PET.

Case 18.

1. A surety on a bond taken upon the sale of property sold by order of the Chancellor for the purpose of distributing the proceeds, who asks and obtains indulgence, in consequence of which no execution issues for more than twelve months, is not discharged from liability under the 19th section of the act of 1828.

2. A bond of indemnity was given to save the obligee "against all harm in the payment of a note" in which the obligee had become the surety of the obligor, which was given upon a sale of property ordered by the Chancellor, for purposes of distribution, and by the decree was to have the force and effect of a replevy bond. The surety asked and obtained indulgence for more than twelve months after the bond fell due. Held—that the surety, having asked indulgence before and after the bond fell due, was not exonerated under the 19th section of the act of 1828; and the obligor having failed to pay the bond when due, was bound to reimburse the surety upon his discharging the bond even after the lapse of twelve months from the time it fell due.

On the 21st October, 1851, Smith filed his petition in equity in the Garrard Circuit Court, against Spil-

Case stated.

man and Duff, in which he alleges, in substance, that on the first of January, 1849, he became the surety of one James Bates, in a note to George W. Doneghy, a commissioner of the Boyle Circuit Court for the sale of certain slaves, mentioned in a decree of that court, in a suit of Ison and wife against Gaines' heirs, in which estate Bates' wife had an interest, which note amounted to $508, with interest from its date, and payable twelve months after date ; that Bates, before he agreed to become his surety, promised to give him indemnity. Accordingly Bates, with Spilman and Duff as his sureties, executed and delivered to Smith their bond, by which they bound themselves to secure Smith against all harm in the payment of the note to Doneghy. Smith avers that Bates failed altogether to pay the note to Doneghy, and that he, as surety, has paid it off with the interest due thereon, and that Bates, Spilman, and Duff have failed and refused to refund to him the sum so paid to Doneghy, and prays judgment for the amount.

The defendants answered the petition of Smith, in which they deny that the execution of their bond to Smith was the inducement and consideration of his becoming bound as the surety of Bates. That the bond to Doneghy was given and delivered 1st January, 1849, and that their bond, though dated on the same day, was not executed until between the 4th and 10th of the same month, and that it was without any good or valuable consideration moving from the plaintiff, or Bates, to the defendants.

They farther allege that the bond given by plaintiff as surety of Bates, was a bond taken under a sale made under a decree of the Boyle Circuit Court, and was by the decree, and did have the force and effect of a replevy bond, and was due in twelve months from its date, and that no execution issued on said bond for more than twelve months after it became due, and by such failure to issue execution, Smith was released and discharged from liability on said bond, that plaintiff had paid the bond after he was released,

and deny that they are liable in their bond for such pay-    <span>SPILMAN & DUFF<br>vs.<br>SMITH.</span>
ment. The record of the suit directing the sale, and
commissioner's report of the sale, were read, and the
commissioner was examined as a witness for plaintiff,
who proved that he had accounted for the amount of
the bond for the price of the negro bought by Bates,
and that plaintiff had discharged the bond given
for the negro, to which he was surety, by giving his
own note, which witness received as money. That
he had delayed the collection of the bond at the re-
quest of Smith. The Circuit Court, upon allegations
and proof, gave judgment for the plaintiff for the
amount of the sum paid by Smith, with interest,
against Spilman and Duff. They asked for a new
trial, which being refused, they bring up the case by
writ of error.

*J. Burdett and Geo. Robertson*, for plaintiff in error—

We think it too plain for argument or doubt that
the bond given by Bates and Smith .is embraced by
the statute of 1828. Had this court never so decided,
we could not doubt that the Chancellor, and all the
parties, had power to give to the bond all the legal
effect of a replevin bond, the judge having the power
to inforce payment by attachment, without a formal
judgment on the bond by execution; and more es-
pecially as the bond was given on that express con-
dition, which estops the parties to it. But the long
and general practice on the subject, recognized and
legalized by this court, settles the question. Then
does not the letter of the statute include the bond
given by Bates, Gaines, and Smith? and is it not
equally clear that the spirit, object, and policy of the
enactment also apply to it fully and effectually? The
same reason and purpose apply to every bond by
sureties, on which, without suit, or actual judgment, an
execution may be issued. In every such case, and
as much in one as in another of that class of judicial
obligations, the legislature intended (for the benefit
and security of sureties) that unless execution had

SPILMAN & DUFF
vs.
SMITH.

been issued within a year after it might have been issued, the surety should be no longer bound. Is there not as much reason why the sureties in this case should be protected by the statute as there would have been had their bond been in form, as it is in effect, a replevin bond? We cannot elaborate arguments on a proposition so self-evident.

It is, we think undeniable that the guarantee by Spilman and Duff was on the necessarily implied condition that Smith should do nothing to change the course of the law, or prolong his liability, or increase the peril of his guarantors. Consequently, as in the case of *Pope vs. Davidson*, 5 *J. J. Marshall*, 400, if he, by contract with the obligee, procured indulgence, and thus prevented the issuing of an execution, Spilman and Duff are no longer bound, or otherwise bound to him, than they would have been bound to him had he been perfectly passive. We can neither see nor imagine why the principle of that case should not be fully applicable to this; and as no reason why it is not, has been suggested, we will neither argue nor doubt as to that matter. If, then, Smith, when he promised to give his own note for the bond of Bates, &c., was either not legally liable or had prolonged his liability by a voluntary act inconsistent with the contract of indemnity, he can certainly have no right to recover one cent on the covenant of indemnity.

But there is no proof that Smith agreed with the commissioner that if he would forbear execution for a year he would pay. The commissioner says that Smith *promised to pay*, and *therefore* and *because* the amount of the bond, or the greater portion of it, would be coming to Bates himself, under the decree, and that matter had not been "settled up," he did not issue execution. He concludes, it is true, from these premises, that the delay was "at the instance of Smith;" but how, why, or wherefore, does not appear. He does not prove that Smith ever requested him not to issue execution; but only that

Smith, from time to time, promised to pay, and that for that and another stronger reason, as stated, he did not issue execution. There is nothing, according to a fair and reasonable interpretation of the testimony, which would have precluded Smith from claiming exoneration. Stronger proof should be required, and especially when the peculiar attitude of the witness is considered. On the foregoing grounds we claim a reversal. There are other grounds, however, which we deem sufficient.

1. The covenant sued on should be construed as an indemnity against *ultimate* loss. Surely it was not intended that if Bates should not pay the instant the bond became due, the guarantors would then pay the debt to the commissioner. Smith was apprehensive that he might be subjected to irreparable loss to the whole extent of his undertaking, by the possible insolvency of both Bates and the co-surety, Gaines; and by the possibility, also, that on settlement of his wife's interest in her father's estate, Bates might be entitled to no set-off against the bond; or partial loss, if, though Bates might prove insolvent, his interest in the estate, decreed to be paid to him, should not be equal to the amount of the sale bond, whereby the difference would devolve on the two sureties. To guarantee against these consequences, Spilman and Duff covenanted to secure Smith "against all harm in the payment of the note." That is, that if he should ever pay it, he should not sustain any final loss or harm in consequence thereof. It cannot, as we conceive, be construed as a covenant, either that the covenantees would pay as soon as the note should become due, or that if he should choose voluntarily to pay, they would instantly reimburse him, though Bates, or his interest in the estate, might be sufficient for that purpose. It appears to us, therefore, that the *casus fordiris* has not occurred. It is neither shown that Bates' interest will not pay the debt, nor that the co-surety, Gaines, was unable to contribute.

SPILMAN & DUFF
*vs.*
SMITH.

2. It does not appear that Smith has paid, or will ever have to pay, the whole amount of the bond; and as it is evident, *prima facie*, that he will never have to pay it all, Bates being entitled, as the case now appears, to about three hundred dollars, which interest has been, or will be, applied as a credit; and this is shown by the testimony of the commissioner. The decree directs the commissioner to pay to Bates whatever through his wife he might be entitled to out of the proceeds of the entire sale. If this interest be equal to the amount of the bond, the bond is thereby paid. If less, the bond is entitled to a credit *pro tanto*. If this judgment is affirmed, strangers will have to pay, without any value to them, what is already in law and in fact paid, and either Smith, or Bates, or his wife, will pocket it unjustly. Such a judgment, in such a case, cannot be authorized by the laws of the land.

*S. Turner*, on the same side—

A guarantor is only liable on the failure of the principal to pay, and a demand on him to pay, and a failure to perform. The creditor is not bound to institute legal proceedings against the debtor; but they are required to use reasonable diligence to make demand, and to give notice of a failure to pay, otherwise the guarantor is discharged.

The guarantor is not bound to any length of credit that the creditors may choose, but have a right to insist that their risk or responsibility shall be fixed and determined within a reasonable time after the debt becomes due. (*Douglass vs. Reynolds*, 7 *Peters*, 126–7; also note to *Lanusse vs. Barker*, 3 *Wheat.* 154–5.) In the note referred to, authorities are cited to show that the guarantors of a note payable at a future day are discharged—1. If due demand of the principal is not made and notice. 2. If the creditor undertakes to do any act to lessen or postpone the responsibility of the debtor—3. If the creditor give time to his debtor without the knowledge of the guarantor.

*A. A. Burton and J. T. Boyle*, for appellee—

1. The bond of Bates, Gaines, and Smith to Doneghy, is not a replevin bond within the meaning of the 19th section of the act of 1828. (*Stat. Law*, 645.) There is no reason why this statute should be construed to embrace such bond; public policy nor the ends of justice require it. Such bond, *eo nomine*, is not embraced by the act. The obligee in the bond was not plaintiff within the meaning of the 19th section of the act; he had no power to sue out execution on the bond as plaintiff; he was the passive instrument of the court, through whom the court might or might not act. The court could have directed any one else to have acted in the matter, or the court might have suspended action until more than twelve months had elapsed from the time the bond fell due, without vitiating the bond. Will it be pretended that if the court had failed to render any decree directing the collection of this bond for more than twelve months after it became due, that Smith and Gaines, the sureties, would have been exonerated? If not, can it be pretended, with reason, that it was implied that the surety was to be released if there was a failure to sue out execution for twelve months? We do not deny the right and policy of the Chancellor to make sales on credit, and require such bonds to be given. We believe it is necessary for the ends of justice that they should have such power. It has been conceded too long as a power belonging to the Chancellor and approved by the decisions of this Court. (*Leavit & Co. vs. Goggin*, 11 *B. Monroe*, 230.) In the case cited, this court decide, that the Chancellor has the power to enforce the collection of such bonds by execution, rule or attachment. (See, also, *Moon & Taylor vs. Story*, 2 *B. Monroe*, 354.)

The fact that the Chancellor may enforce the collection of these bonds in either of the modes pointed out, is conclusive that they were not intended to be embraced by the 19th section of the act; and the

Spilman & Duff
vs.
Smith.

Chancellor may exercise this power in the enforcement of all interlocutory orders.

If the Chancellor had made no order for the collection of this bond for twelve months after it was due, there could have been no release of the sureties.

Final decrees of Courts of Chancery are regulated by the common law or statute law of executions. This is by express provision. Interlocutory orders and decrees, and bonds taken in performance of them, are not provided for by law or statute ; such is the case with the bond in question. It is a *casus omissus*, and if this court is to supply the deficiency in the law now, we insist that the equity of the case is for Smith, and the law should be so declared.

Is the Chancellor, or Doneghy, or the parties whose property was sold, the plaintiff in this bond? To whom does the language in the 19th section apply? " If the plaintiff in any bond having the force of a judgment, shall, at any time, for the space of twelve months after execution is due," &c., "fail to issue such execution, the surety in such bond shall stand and be released," &c. Such is the language of the act. Surely no reference can be had by this language to such a bond as that in question. This law has no reference to common law bonds, and is enacted expressly with reference to common law executions, though it is made to embrace executions or final decrees in chancery. Certainly, neither Spilman and Duff, nor Smith, had notice of any such law as is attempted to be supplied in this case, and did not execute the bond under any idea that it was a replevy bond, or qualified by the statute of 1828.

2. On the hypothesis that the bond is to be treated as embraced by the act, and subject to its provisions, was Smith ever released from liability as surety, and was the payment of the bond a voluntary act? Smith had requested indulgence of Doneghy upon the bond before it became due, and promised payment both before and after the expiration of the twelve months from the time it fell due. Such is the

testimony of Doneghy, and the learned counsel is under a mistake in giving any other version of his testimony, or any other effect to it. We refer the court to his evidence. Suppose Smith had given to Doneghy his obligation that he would take no advantage of his delay in suing out execution, and agreed to pay the bond, and when more than twelve months had elapsed, could Smith have availed himself of the delay to which he had assented, and insist upon his release? Is not his parol agreement equally binding? The execution of the note by Smith to Doneghy must be treated as carrying out his parol agreement to pay, previously made to Doneghy, and the parol agreement to pay as a satisfaction of the undertaking of Smith to pay the bond of Bates, to which he was surety from the date of that promise. Doneghy might have relied upon it as a discarge of the bond and compelled performance by Smith. He never was released. We rely on an affirmance.

*J. F. Bell*, on the same side—

1. The obligation imports a consideration, and no effort has been made to prove that there was none. On the contrary, the proof sustains the presumption arising on the face of the writing that there was a good consideration.

2. The main defense is that Smith did not pay the debt for which he was surety for Bates, and against which Spilman and Duff had agreed to indemnify him until after twelve months from the time it was due; and that that note is to be treated as a replevy bond, and as no execution was issued on it for more than twelve months after it was due, that Smith was released, and that his payment thereof to the obligee, the Commissioner of the Court of Chancery, was a voluntary payment, not in discharge of any legal liability, and that therefore they are released from their covenant of indemnity.

This defense cannot avail. The 19th section of the act of 1828 has no application in the opinion of counsel. It applies only to such bonds as, by virtue

SPILMAN & DUFF
*vs.*
SMITH.

of the statute *eo nomine*, are bonds having the force of judgments—such as sale bonds, replevy bonds, and forthcoming bonds, taken under writs of execution, and in accordance with the statute.

This 19th section authorizes a release of a surety in such bonds upon failure to sue out execution for thirty days after notice to do so. Certainly it cannot be pretended that this note given by Bates and Smith and Gaines to Doneghy has all the incidents of such statutory bonds. Though the Chancellor has the authority to give to the bonds taken under his decrees of sale, (so as to make them easily collected,) the effect of replevy bonds, it would seem to be a very arbitrary exercise of power for the courts to apply to these bond, taken under a Chancellor's decree, statutes of limitations which were intended to apply to statutory bonds.

3. But the payment by Smith was not voluntary, even if the court should differ with us upon the other point. Before the twelve months had expired, Smith had asked for indulgence, whilst bound to pay under any circumstances, and begged Doneghy not to issue execution. He could not then be sustained in refusing to pay, either at law or in equity, though the twelve months had passed; and if he could not, Spilman and Duff are bound to indemnify him. If Smith had given his bond to Doneghy, and Doneghy had relied upon that bond, and issued no execution for more than twelve months, it would not be pretended that Spilman and Duff could have escaped responsibility. There is no difference in the legal obligation arising upon the case supposed and that which exists here.

In the case of *Pope vs. Davidson*, 5 *J. J. Marshall*, 400, the obligation was different, and the case has no application.

December 28.

Judge CRENSHAW delivered the opinion of the Court—

By virtue of a decree in a suit of Ison and wife against Gaines' heirs, several slaves were sold by the commissioner appointed in said decree, and

James Bates became the purchaser of one of the slaves at the price of $508. The slaves were sold upon a credit of twelve months, and Bates, with J. B. Smith and S. A. Gaines, as sureties, executed a bond to the commissioner for the payment of said sum of $508. Smith refused to enter into the bond as surety, unless Bates would indemnify him. Bates agreed to do so, and Smith took the slave into his possession, which Bates had purchased, and held him in possession until a bond of indemnity was given to him by Bates, with Spilman and Duff as sureties. This bond is as follows:

"Whereas, James W. Bates has executed his note to George Doneghy, commissioner, for the sum of $508, due in twelve months from date, with interest from date, and Jeremiah B. Smith has become my security for the same. We, the undersigned, promise to secure the said Smith against all harm in the *pament* of the said note, but if the said Bates should pay said note, then this obligation to be null and void, or else to remain in full force as a replevy bond.

J. W. BATES,<br>JAMES H. SPILMAN,

*January 1st,* 1849.          WILLIAM W. DUFF."

According to the directions of said decree, the bond executed by Bates, with Spilman and Gaines as sureties, for the payment of the price of the slave, was to have the force and effect of a replevin bond, and, accordingly, it was so taken.

After the sale bond was reported to court, the said commissioner was appointed to collect the same. But its collection was not coerced, and no execution was ever issued upon it, and more than twelve months expired after it became due before anything was done towards satisfying and discharging it. But some months after the lapse of twelve months from and after it became due, Smith executed his own note in discharge thereof, which was received by the commissioner as cash and in payment. Smith then instituted suit upon said bond of indemnity, against

Spilman and Duff, the sureties therein, and recovered judgment againt them for the amount he had paid with interest and costs of suit. The court refused to grant a new trial, and Spilman and Duff have brought the case to this court for revision.

The principal ground relied upon for a reversal is, that the sale bond had the force and effect of a judgment, and no execution having issued thereon for more than twelve months after it became due, the sureties therein were released by operation of law, and Smith having paid it, or executed his note in payment after such release, he did so when he was not bound to pay, or if bound, it was by his own wrong, and the payment was in his own wrong, and therefore, that he cannot hold the sureties in the bond of indemnity responsible.

It is contended however, that although the Chancellor had a right to direct the sale bond to be taken so as to have the force and effect of a replevin bond, yet, that it is a character of bond not contemplated by the Legislature when they passed the act of 1828, to amend and reduce into one the execution laws of this state, (1 *Stat. Laws,* 631;) and that the 19th section of said act has no application to this case. But the mischief intended to be guarded against exists alike in all replevin bonds having the force of judgments, whether taken in the ordinary way, or by the order of the Chancellor. The sale bond in this case has, by virtue of the Chancellor's direction, the force and effect of a judgment, and comes within the reason and spirit of said section. If, therefore, the failure to issue execution upon the bond within twelve months after it became due, was the only fact to be taken into consideration in determining the responsibility of Smith upon the sale bond, we would say that such failure released him, and that he ought not, and could not, after his release and exoneration, pay the debt, and then look to the bond of indemnity for remuneration. Such payment, under such a state of case, would be in his own wrong, and he ought

not to be suffered to take advantage of it, and hold the obligors in the bond of indemnity responsible for the sum which he had thus paid.

It is proved, however, that Smith, both before and after the expiration of twelve months from the maturity of the sale bond, promised to pay it; that the delay to issue execution, and coerce the payment of the bond was produced at the instance and request of Smith. Smith, therefore, could not claim to be released and exonerated from the payment of the sale bond in consequence of the delay to sue out execution thereon for twelve months after it became due, when that delay was the result of his own act, and was occasioned at his own instance and request. He, consequently, remained under a legal obligation to pay off and discharge the bond. But, it is contended that, although he remained bound upon the bond after the expiration of twelve months from its maturity, this being the result of his own act, he cannot hold the sureties in the bond of indemnity liable to him for having paid the sale bond.

If the conduct of Smith was wrong, (the sureties in the bond of indemnity not having been consulted,) and it can be said to have prejudiced their rights, it may be that they are exonerated from responsibility upon their bond. But, was his conduct wrong, and can he be properly chargeable with having prejudiced their rights? According to the construction which we place upon the bond of indemnity, its obligation is substantially this: That Bates should pay the sale bond at maturity, and if he failed to do so, and Smith should pay it for him, they were to save him from all harm in doing so. The words of the bond, in the obligatory part thereof, are: "We, the undersigned, promise to secure the said Smith against all harm in the payment of the said note, (the sale bond,) but if the said Bates should pay said note, then this obligation to be null and void, else to remain in full force as a replevin bond." Bates was bound to pay the sale bond at maturity; if he failed

1. A surety in a bond taken upon the sale of property sold by order of the Chancellor for the purpose of distributing the proceeds, who asks and obtains indulgence, in consequence of which no execution issues for more than 12 months, is not discharged from liability under the 19th section of the act of 1828.

2. A bond of indemnity was given to save the obligee "against all harm in the payment of a note" in which the obligee had become the surety of the obligor, which was given upon a sale of property ordered by the Chancellor, for purposes of distribution, and by the decree was to have the force and effect of replevy bond. The surety asked and obtained indulgence for more than 12 months after the bond fell due. Held—that the surety, having asked indul-

gence before and after the bond fell due, was not exonerated under the 19th section of the act of 1828; and the obligor having failed to pay the bond when due, was bound to reimburse the surety upon his discharging the bond even after the lapse of 12 months from the time it fell due.

to do so, and Smith should pay it for him, the bond of indemnity was to be in full force, and they were to save him from all harm for doing so. The sale bond became due, and Bates failed to pay it, as he had bound himself to do. Bates having failed to make payment, Smith, as joint obligor with him, was bound, forthwith, to pay the bond. And had he done so, it is not denied but that the sureties in the bond of indemnity would have been responsible. But because it was not convenient for Smith to pay, and he asked indulgence which was extended to him, and extended for more than twelve months after the maturity of the sale bond, it is insisted that the sureties in the bond of indemnity are released, because, by the indulgence, thus procured, their risk was increased, and they were thereby prejudiced. But Smith made no binding contract with the obligee in the sale bond; he only craved indulgence, and indulgence was granted, but the obligee could have sued out execution at any moment, and coerced payment, notwithstanding the prayer of Smith to be indulged. The fact that Smith begged indulgence did not necessarily produce the delay of execution until more than twelve months had elapsed from the falling due of the sale bond. True, it was at his instance that the delay was produced, and hence he could not claim to be released by operation of law. And he, continuing to be bound, paid the debt of his principal, upon the happening of which contingency, the sureties in the indemnity bond were to save him harmless. They made an absolute undertaking to pay Smith, if he Smith should pay the debt of his principal, Bates. It formed no part of the contract that Smith, if unprepared to meet the sale bond, when due, and Bates should not pay it, was to ask no indulgence, but to pay *instanter*. There was nothing to prohibit him from begging and procuring indulgence, and it cannot be said with propriety that Smith did any thing which he had not a right to do, or that he acted in bad faith towards those who had

undertaken to indemnify him, and hence, they cannot, with propriety, charge Smith with enlarging their obligation, and increasing their responsibility. Their bond bound them to pay, if Smith should pay, and their hazard had already been incurred by their own absolute stipulation without any restrictions upon Smith. The case is not to be assimilated to that of ordinary sureties in a joint bond for the same principal; and even in that case, no mere indulgence to the principal, though at his instance, will release the sureties. For such indulgence to release a surety, a binding agreement must have been made between the obligee and the principal obligor. In this case, Spilman and Duff, the sureties in the bond of indemnity, are not the sureties of Smith, but the sureties of Bates. They undertake, substantially, that Bates will pay, and if he does not, and Smith should pay, they will pay him. When the sale bond became due, they ought to have seen to it, that Bates complied with the terms of the sale bond; and, in his default, to have taken whatever steps were in their power to have indemnified themselves against ultimate responsibility to Smith. They trusted Bates— Smith was unwilling to trust him—and refused to go into the sale bond with him, unless indemnified. They promised to pay if Bates did not, and Smith should have to pay for him. Smith had it to do, and did it without a moral or legal fault; and it is the opinion of a majority of the court, Judge Simpson dissenting, that they should save him from harm as they undertook to do. If Bates failed to pay, their bond was to remain in full force, and they would be responsible to Smith for nominal damages, even if Smith had not paid off the sale bond.

Judgment affirmed.