# OLIVER AND BURR, A CORPORATION, *vs.* THE NOEL CONSTRUCTION COMPANY.

*Building Contracts—Obligation of Sub-Contractor to Do Work According to Specifications of Original Contract — Claim Against Third Party Surrendered Upon Promise to Save Harmless Not a Guaranty—Set-off—Instructions as to Interest—Harmless Error.*

When a sub-contractor agrees to do certain work on a building in accordance with the specifications of the original contract, he is bound by such specifications, and in an action by him against the contractor to recover for work done, the jury was properly instructed that if plaintiff's work was not done according to the specifications, and by reason thereof the defendant suffered loss, then he is entitled to an allowance against the plaintiff for the same.

The defendant was the contractor for the erection of a building according to certain specifications, and sub-let a part of the contract to the C. Company, which in turn sub-let its contract to the plaintiff company. The work as done by the plaintiff was not satisfactory and was condemned, whereupon defendant refused to pay the C. Company, which accordingly refused to pay the plaintiff. Then the plaintiff promised the defendant that if it would pay the C. Company, so that the company would pay it, the plaintiff would hold the defendant harmless against any loss it would sustain and be responsible for any damage. Upon the faith of this promise, the defendant paid the C. Company. In an action to recover for work done for the defendant company under another contract, defendant's plea of set-off alleged that in consequence of the manner in which the work had been done under the sub-contract with the C. Company, the defendant had been subjected to a loss greatly in excess of plaintiff's claim. *Held,* that this plea is a valid set-off, and plaintiff's promise to be responsible for any loss if defendant would pay the C. Company was

not a contract of guaranty, but was an original undertaking, upon the faith of which defendant surrendered its claim against the C. Company.

When the defendant files the general issue pleas to the declaration, an additional plea of set-off is not an admission of the correctness of plaintiff's account.

A prayer instructing the jury that they are at liberty to allow interest on a claim should fix the date from which interest should be calculated, but when it appears from the amount of the verdict that the appellant was not injured by the failure of a prayer to fix such date, the defect is not a reversible error.

*Decided January 13th, 1909.*

Appeal from the Baltimore City Court (SHARP, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Richard M. Duvall* and *Rignal W. Baldwin,* for the appellant.

*J. Kemp Bartlett* and *R. Howard Bland,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the plaintiff's appeal from a judgment entered against it in the Baltimore City Court. The declaration contains the common counts only, to which the defendant pleaded the general issue pleas upon which issue was joined. Subsequently, by leave of Court, the defendant filed a plea of set off to which a replication was filed and issue was joined.

An itemized account was filed with the narr., by which it appears that the suit was brought to recover the sum of twenty-one hundred and fifty-one dollars and twenty-one cents alleged to be due the plaintiff by the defendant on account of certain work which will be presently alluded to. It appears from the bill of particulars filed by the defendant with its plea of set off that the plaintiff is indebted to it in

the sum of four thousand one hundred and sixty-two dollars and seventy-five cents. The trial resulted in a verdict in favor of the defendant for nine hundred and thirty-four dollars and eighty-two cents upon which final judgment was entered. It is from this judgment that the appeal before us is taken.

The questions of law raised upon the record are simple; but there is very great conflict in the testimony. Only one bill of exceptions is brought up by the appeal, and that relates to the ruling of the Court upon certain prayers presented at the close of the whole case. With the weight of evidence and the credibility of the witnesses we have nothing to do, as those matters were exclusively for the jury, and if the case was fully and fairly submitted to the jury under the granted prayers the judgment must be affirmed. It is not necessary in order to dispose of the case to indulge in a minute discussion of the evidence. It will be sufficient to consider its general purport and effect. The record shows that in 1902 Edgar M. Noel and Daniel W. Thomas entered into a contract with the United States Government for the construction of certain buildings at the Naval Academy at Annapolis. This contract was assigned to the Noel Construction Company, the appellee, a corporation organized to finance the work. This work was to be done in accordance with elaborate and detailed specifications furnished by the Government. The Noel Construction Company sub-let the contract for the fire-proofing of the Cadets Quarters' Building to the Columbian Fire-proofing Company of Pittsburg, which in turn sublet their contract to Oliver & Burr, the appellant, a New York corporation, and this last named company proceeded under that contract to do the work. The contract of the Pittsburg Company, which was sub-let to the appellant, was for the metal partitions on certain floors of the Cadets' building. Later the Government decided to raise the roof of this building, and add a fourth floor. The contracts for the metal lathing and hung ceiling were made directly between the appellant and appellee. On October 9, 1903, the appellant

wrote to the appellee proposing "to furnish and put in place all the metal furring required by the plans and specifications of Mr. E. Flagg, architect, for the Cadet Quarters' Building, at Annapolis, Md., including paragraphs 875 to 877 inclusive, and all other paragraphs therein referred to for the sum of seventy-five hundred ($7,500.00) dollars; subject to contract that may be mutually agreed upon." This proposal was accepted by the appellee in a letter to the appellant of that date. By letter of October 31, 1903, the appellant proposed to furnish and erect partitions on the top floor of this building for the sum of fifty-nine hundred dollars, and the suspended ceiling for forty-seven hundred dollars. This offer was accepted by letter of February 18, 1904. The appellant at the time these contracts were made was engaged in doing the same character of work on the building under his contract with the Pittsburg Company, and he proceeded with the work under all the contracts.

The contract for the work of plastering to be done in this building was sub-let by the general contractor to Barwell & Cantlin, and the manner in which their work was done presented, as will be seen, one of the important questions of fact for the consideration of the jury. As the main questions in this controversy concern the steel studding and lath partitions and the plastering, it is necessary at this point to refer to the parts of the specifications which provide for that work. A question was made during the trial as to the duty of the appellant to do certain painting for which the defendant claimed an allowance in his plea of set-off. This question was raised by the plaintiff's eighth prayer, which was, however, abandoned in this Court, and it will not be necessary to consider the paragraph of the specifications providing for that work. The paragraphs of the specifications relating to metal and lath partitions and to the plastering are as follows:

"838. The partitions for toilet and bath rooms in basement of wings and in ground floor of stair towers, and partitions in roof space over Memorial Hall, extending from top of ceiling light up to skylight curb, are to be constructed of

iron or steel studding and metal lath for 2 in. solid plaster finish. Studding to consist of 1 in. or $\frac{3}{4}$ in. steel channels as height or location may require, spaced 12 in. on centers and secured at bottom and top to the concrete, iron or other construction by clamps or angles, and properly braced or stiffened where so required. The partitions enclosing basement stairs in the two stair towers are to extend from ground floor up to and properly finish against bottom of stair string above.

"888. All plastering, except as hereinafter otherwise specified, is to be best three-coat work of lime mortar mixed in proper proportion to give the best results, the mortar for scratch and brown coats is to be gauged with Portland cement, using one-half of a barrel of cement to each cubic yard of mixed mortar for brick, terra cotta, block and concrete surfaces, and not less than three-qaurters of a barrel for lathed surfaces."

The plaintiff must be held to have undertaken to do all the work contracted for upon the building in accordance with the specifications. Mr. Oliver was aware of the specifications and was no doubt familiar with their requirements, otherwise it would have been impossible for him to bid intelligently upon the work. Besides, his proposal of October 9, 1903, was to do the work in accordance with the plans and specifications. It would be most unreasonable to suppose that it was in contemplation of either party that the work could be done in disregard of the plans and specifications, because they both knew that work so done would not be accepted. Mr. Albert Oliver, the President of the appellant company, was the only witness offered in chief in support of the plaintiff's case, and he gave testimony tending to prove that the plaintiff had done the work embraced in the account filed with the declaration, and that the defendant was indebted to the plaintiff in the full amount claimed, to wit, $2,151.21. He testified that the whole trouble arose from the plastering done by Barwell & Cantlin; that the plaintiff had nothing to do with the plastering, and that he had warned the plasterers that they were spoiling the work.

The defendant offered evidence tending to prove the following facts: That the work done by the plaintiff under its contract with the Pittsburg Company was not done according to specifications and had been condemned by the Government, and that this was known to the plaintiff; that the defendant withheld payments to the Columbian Company, which in turn withheld payments to the plaintiff; that the plaintiff, being badly in need of money which it claimed was due by the Columbian Company, agreed with the defendant over the telephone, on May 9, 1904, that if it would pay that company so that it could pay the plaintiff, the plaintiff would hold the defendant harmless against any loss it would sustain; that the Oliver & Burr Company would become responsible to the defendant for any damage it might sustain; that it did pay the Columbian Company upon the faith of this promise, and that that company paid the plaintiff; that this agreement had reference to the work done by the plaintiff under its sub-contract with the Columbian Company, and was confirmed by letter of the plaintiff dated May 9th, 1904. It further offered evidence tending to prove that the plaintiff in doing the work referred to in the agreement had not observed the requirements of the specifications, and that the work was entirely unsatisfactory and was condemned, and that in consequence thereof the defendant was subjected to a loss greatly in excess of the plaintiff's claim; that it sustained certain other items of loss set out in the bill of particulars filed with its plea of set-off. It further offered evidence to prove that the plastering was done in strict conformity to the requirement of the specifications, which has been herein quoted relating to that work.

In rebuttal, Mr. Oliver denied that he had made the agreement to be responsible for loss resulting from work done under the contract with the Columbian Company, and also disputed certain other allowances claimed by the defendant, and repeated his former statement that the whole trouble was due to plastering.

In this outline of the evidence are seen the issues of fact

which the jury were to decide, as well as the legal questions concerning which the Court was asked to advise them. The plaintiff offered sixteen prayers. The Court granted the plaintiff's first and thirteenth prayers, and the defendant's sixth prayer. It amended the defendant's seventh prayer and granted it as modified, and refused all the other prayers. To the granting of the two prayers on behalf of the defendant, and in refusing its other prayers, the plaintiff excepted. The jury were told by the plaintiff's first prayer, that if they found from the evidence that the plaintiff undertook to provide the materials and erect the steel studding and lathing for the partitions on the ground floor and the first, second, third and fourth floors in the Cadets Quarters' Building, and the hung ceilings and extras, mentioned in the evidence, according to the specifications therefor, also offered in evidence; if they shall find said specifications, and for the prices mentioned in the plaintiff's proposals and the account offered in evidence, and that said work was performed and materials furnished in all respects according to said specifications; that the defendant accepted said work and paid the whole of said contract prices except the balance $2,151.21, as shown by said account, then the plaintiff is entitled to a verdict of said balance with interest in the discretion of the jury from the time said work was fully completed, less such sum, if any, as the jury may find the plaintiff agreed to deduct from its $5,900 proposal as testified to by the witness Noel, and any damage the jury may find resulted to the defendant from the withdrawal of the letter referred to in the letter of May 9th, 1904, written by Albert Oliver to the defendant, if the jury shall find said letter, and that it contained the agreement between the parties, and such sums as are charged in said account of the plaintiff and which the jury may find were disallowed by the United States Government; provided, if the jury shall find the total amount the defendants are entitled to, by way of set-off, exceed the amount of the present claim, then the jury are at liberty to find for the defendant for the amount of such excess.

By its thirteenth prayer the jury were instructed that the defendant was bound to establish by a preponderance of evidence the alleged agreement set up by the defendant as having been made by it with the plaintiff through the witness Noel over the telephone, and if the minds of the jury are left in a state of equipoise, then the defendant is not entitled to recover anything by reason of said agreement under its plea of set-off in this case.

We are of opinion that by the plaintiff's first and thirteenth prayers and the defendant's seventh prayer the whole case was fairly submitted to the jury. Under these prayers all the issues of fact raised by the pleadings were open to discussion before the jury, and the plaintiff under them was given a full opportunity to present all its contentions to the jury.

The proposition announced in the plaintiff's second prayer is more fully and correctly stated in its first; its third prayer contains an hypothesis of fact of which there is no evidence, viz, that the defendant made no objection to the work; its fourth, fifth and sixth are too general and indefinite. They contain no instructions to the jury as to the effect of the construction contended for, under the facts of the case, upon the rights of the parties. It by no means follows as a legal conclusion that the plaintiff was entitled to recover, even if the construction of the specifications stated in the prayers be correct. They contain no certain or definite guide for the jury. The subject-matter of the seventh prayer is fully covered in the first. The eighth prayer was abandoned. The ninth prayer erroneously assumed that the plaintiff was not bound under the contract of February 18, 1904, to comply with the specifications.

The tenth prayer asserts that the effect of the plea of set-off is an admission of the correctness of the plaintiff's account. This is maintained notwithstanding the fact that the general issue pleas filed by the defendant deny the whole claim.

The eleventh prayer is open to the same objection as the fourth, fifth and sixth, and was besides calculated to mislead the jury. The twelfth prayer asserted that there was no

legally sufficient evidence in the case to entitle the defendant to recover any damages under the agreement of May 9, 1904. As we have heretofore shown, there was abundant evidence upon this point.

The fourteenth, fifteenth and sixteenth prayers are based upon a misapprehension of the nature of the agreement of May 9, 1904. They treat this contract as one of guaranty or suretyship; but, if it existed at all, it was an original undertaking on the part of the plaintiff to reimburse the defendant for losses which it might sustain on account of the work mentioned; provided the defendant would do certain things which the evidence tended to show it did do. Its object was to protect the defendant in case it surrendered its claim against the Columbian Company for the benefit of the plaintiff, which it did, and the plaintiff was paid the money which that company was withholding. When the object of the agreement, its subject-matter and the surrounding circumstances are considered, there can be no doubt that the agreement was a valid original undertaking.

There can, we think, be no possible objection to the plaintiff's seventh prayer. It merely told the jury that if they found that the plaintiff's work was not performed according to the specifications, and should find that by reason of the failure of the work to conform with the specifications the defendant suffered loss or damage, then the defendant was entitled to an allowance against the plaintiff for such loss.

By the appellee's sixth prayer the jury were instructed that in case they found for the defendant they were *at liberty,* in their discretion, to allow interest. It is objected to this prayer that it does not fix the date from which they might calculate the interest. Upon the facts contained in the record, there is no doubt that the prayer is defective in this respect, as there is no evidence as to when the several items in the set-off became due; but when the amount of the verdict and all the facts are considered we are not satisfied that this defect resulted in any injury to the appellant. The Court will not reverse a judgment for an error of this nature where it is rea-

sonably certain, as it is in this case, that the appellant has not been injured by the erroneous ruling.

This case, involving many disputed questions of fact, was fairly tried in the Court below, and submitted to the jury under instructions which allowed them to consider fully all the contentions of the respective parties, and from an examination of the whole record we see no good reason why the judgment, which was entered as the result of a long trial, should be disturbed, and it will, therefore, be affirmed.

*Judgment affirmed with costs.*