BENJAMIN ROSENBLOOM ET AL. *v.* ALFRED W.
FEILER

[No. 96, September Term, 1980.]

*Decided July 2, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Stuart M. Salsbury,* with whom were *Max R. Israelson* and *Israelson & Jackson, P.A.* on the brief, for appellants.

*Bernard W. Rubenstein,* with whom were *Edelman & Rubenstein, P.A.* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

This case involves an oral indemnification by an individual of the guarantors of payment of a bank loan to a business corporation. The guarantors sued the indemnitor and obtained judgment following a trial to the court which rendered a written opinion. The Court of Special Appeals modified the judgment and, as modified, affirmed. *Feiler v. Rosenbloom,* 46 Md. App. 297, 416 A.2d 1345 (1980). Each side petitioned for, and was granted, certiorari. As the case comes to us the issues involve (1) whether the oral agreement between the indemnitor and the guarantors is within the Statute of Frauds; (2) whether the indemnitor's liability was terminated by the extension of the loan; (3) the period during which interest on the loan falls within the indemnitor's promise; (4) the amount of loan principal which falls within the indemnitor's promise; and (5) whether the guarantors were obligated to mitigate damages. As a result of our review, we shall reinstate the judgment of the trial court.

The borrower was Togs, Inc. It was engaged in developing, manufacturing and marketing a patented form of button developed by Edward J. Kahn (Kahn). All parties to this action were directors, officers and shareholders of Togs, Inc. Benjamin Rosenbloom (Rosenbloom), Charles Ellerin (Ellerin), Adolph Farber (Farber) and William Chanoff (Chanoff), hereinafter collectively the "Plaintiffs," were

guarantors. The defendant-indemnitor is Alfred W. Feiler (Feiler). Plaintiffs seem principally to have been investors in the business. Feiler had for many years been engaged in the button business in New York City and was brought into the group primarily because of his expertise. Day-to-day management was in the hands of Kahn, as president, and of an executive vice president. In December 1972 Togs, Inc. was planning a nationwide marketing of its product and on "going public." Financing of this expansion, prior to receipt of the anticipated new equity capital, was by borrowing. Togs, Inc. turned to Maryland National Bank, where it had one or more loans outstanding, for an additional line of credit of $250,000.

By a promissory note dated December 18, 1972 Togs, Inc. promised to pay to the order of Maryland National Bank $250,000 six months after that date with interest at 7½% per annum. The note was prepared to have "PAYMENT GUARANTEED" by Rosenbloom, Kahn, Ellerin, Farber, Feiler and Chanoff. Rosenbloom signed as guarantor on December 18 and effected a $50,000 advance to Togs, Inc. that day. The next day, at a meeting of the board of directors, the note was presented for the signatures of the balance of the directors, as guarantors. When Feiler was unwilling to sign, the other directors were unwilling to go on, or remain on, the note, absent the signatures of all. The trial court found that there then ensued a conversation between Rosenbloom, Farber and Feiler in which "an agreement was reached whereby [Feiler] was not required to sign as a guarantor, but would still accept his responsibility for a pro rata one-sixth share of the loan payable to the five signatory guarantors who would be required to pay in the event of default by the corporation." The other directors signed as guarantors on the note.[1] At that meeting Feiler was elected chairman of the executive committee of the board of directors.

---

1. Subsequently Farber, Rosenbloom and Ellerin indemnified Kahn for his obligation on the guaranty in exchange for Kahn's stock in Togs, Inc.

The next day Feiler wrote to Farber the following letter.

> I want to confirm to you that I accept my share of
> the last note in the amount of $250,000.00 signed by
> you and [Rosenbloom] with the Maryland Bank.
> It is my understanding that my share will be one
> sixth of the total amount.
> This Note is to be repaid to the bank from proceeds
> of the public offering and this authorization,
> therefore, will be voided at that time.
> I would also like to make the point that my share of
> the financial responsibility would automatically be
> considered as void if for any reason there might be
> a change in the executive committee as established
> in yesterday's meeting of the Board of Directors.

However, based upon an admission by Feiler in his deposition, which was placed in evidence, the trial court further found that "at the time [Feiler] orally promised the plaintiffs to be partially responsible for the loan guarantee, which promise induced the plaintiffs to become guarantors, no condition or qualification of liability was mentioned."

The $250,000 loan was not paid by the due date of June 18, 1973. It was extended at a floating rate of interest which at all relevant times exceeded 7½%. A public offering never came to fruition and Togs, Inc. invoked Chapter XI of the Federal Bankruptcy Act. The debt was gradually paid down by the Plaintiffs by partial payments of principal, with interest on the declining balance, and was extinguished on June 17, 1977.

The trial court determined that Feiler was liable to the Plaintiffs under the oral indemnity contract for one-sixth of $250,000 at 7½% interest, that "[s]uch rate of interest shall be calculated as extending from December 19, 1972 until June 17, 1977"[2] and that "[t]hereafter and until the date of Judgment the interest rate shall be 6 percent." On May 3, 1979 judgment for $41,666.67 "plus interest as above set

---

**2.** We interpret this judgment to mean that interest at the rate of 7½% is to be computed on the declining balance of outstanding principal.

out" was entered in favor of the Plaintiffs, with costs. Feiler appealed. The Court of Special Appeals, in modifying the judgment, concluded that the one-sixth indemnification was to be applied only to $200,000 of loan advances and calculated interest at 7½% on Feiler's share only to June 18, 1973.

In the relationships involved in this appeal, Maryland National Bank is the creditor of Togs, Inc. and the obligee of the Plaintiffs' guaranty of payment. Togs, Inc. is the principal whose debt to Maryland National Bank was guaranteed by the Plaintiffs to that bank. Each of the Plaintiffs, by signing "PAYMENT GUARANTEED" on the note, engaged that "if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." Md. Code (1975), § 3-416 (1) of the Commercial Law Article. The liability of a guarantor of payment is indistinguishable from that of a co-maker. *Etelson v. Suburban Trust Co.*, 263 Md. 376, 380, 283 A.2d 408, 411 (1971). In the terminology utilized by L. Simpson, *Handbook on the Law of Suretyship* (1950), the Plaintiffs are sureties.

> The surety's promise is in form a direct and primary promise to pay the debt of another. It is usually, though not necessarily, made jointly or jointly and severally with the principal and for the same consideration, and gives rise to a primary duty. [*Id.*, § 14, at 16.]

The promises of the Plaintiffs to guarantee payment run to Maryland National Bank, as the holder of the instrument. Feiler, the indemnitor, made a promise running to the Plaintiffs to hold them harmless for one-sixth of the loan.[3] *Simpson, supra,* § 17, at 28 describes the distinction between suretyship (guaranty of payment) and indemnity as follows:

---

3. Because the Plaintiffs have paid the bank in full on its loan to Togs, Inc., it is presently immaterial whether Feiler's promise was strict indemnity against loss or damage or indemnity against liability. *See* Levin v. Friedman, 271 Md. 438, 317 A.2d 831 (1974).

> Like the contract of suretyship, the contract of indemnity has as its purpose security of the promisee against loss. The great difference between the two lies in the character of the promisee. In suretyship the promise runs to an obligee or creditor, present or prospective. In indemnity the promise runs to an obligor or debtor present or prospective. In suretyship the promisee has or is about to extend credit to a third person, the principal, and the promise is made to protect the promisee creditor in case the principal fails to perform. In indemnity, the promisee owes or is about to assume an obligation to a third person, the creditor, and the promisor agrees to save him harmless from loss as a result of his assuming that obligation.

With the distinctions between these relationships in mind, we turn to the arguments of the parties.

## I

Feiler contends that his oral promise is unenforceable because it is a "special promise to answer for the debt, default or miscarriage of another person," *i.e.,* Togs, Inc. Md. Code (1957, 1978 Repl. Vol.), Art. 39C, § 1 (1). The Court of Special Appeals, in an opinion by Chief Judge Gilbert, after a thorough review of the authorities, applied the majority or Corbin rule which places outside of the Statute of Frauds an oral promise of indemnity made to a surety or guarantor. Under that analysis the indemnitor's promise is not to answer for the debt of the principal, either to the creditor, or to the surety on the debtor's obligation to indemnify the surey. *Feiler v. Rosenbloom, supra.* Feiler does not seek review by this Court of the determination by the intermediate appellate court to apply the Corbin rule as the law of Maryland. Rather, he raises a mixed factual and legal contention that the parties intended their contract to be one of guaranty. He relies on testimony indicating that the Plaintiffs regarded the responsibility of accepting the obli-

gation of guaranteeing the note as that of each of the directors of Togs, Inc. Feiler, however, would not sign the note and thereby promise as a guarantor to the bank. Consequently, a substitute arrangement was effected, as a business matter, under which Feiler promised the Plaintiffs to be responsible for a one-sixth share of the loss or liability which the Plaintiffs might incur by their promises to the bank. It was the function of the trial court to determine the facts. On the facts found by it, that court correctly concluded as a legal matter that Feiler's promise to the Plaintiffs was a contract of indemnity.

Next, Feiler points to the rule illustrated by *Crown Realty Corp. v. Weinstein,* 177 Md. 260, 263, 9 A.2d 602, 603 (1939) that:

> [W]henever the main purpose of the promisor is to subserve some pecuniary or business purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.

Feiler says his promise does not fall within that rule. From this he leaps to the conclusion that the Statute of Frauds must apply. The rule referred to deals with a class of promises which are made to a creditor and which, although they may be in form a promise to pay the debt of another, are original and not collateral to the promise of the debtor.[4] In

---

4. Cases illustrating the difference between original promises that take a contract outside of the Statute of Frauds and collateral promises that require compliance with the Statute include: Blumenthal v. Heron, 261 Md. 234, 274 A.2d 636 (1971); Kline v. Lightman, 243 Md. 460, 221 A.2d 675 (1966); Mangione v. Braverman, 234 Md. 357, 199 A.2d 225 (1964); Kerner v. Eastern Dispensary and Cas. Hospital, 214 Md. 375, 135 A.2d 303 (1957); Strohecker v. Schumacher & Seiler, Inc., 185 Md. 144, 43 A.2d 208 (1945); DeWaters v. Mergler, 183 Md. 574, 39 A.2d 668 (1944); Hodgson v. Burroughs, 175 Md. 413, 2 A.2d 407 (1938); Auburn Shale & Brick Co. v. Cowan Bldg. Co., 125 Md. 221, 93 A. 443 (1915); Huff v. Simmers, 114 Md. 548, 79 A. 1003 (1911); Oliver & Burr v. Noel Constr. Co., 109 Md. 465, 71 A. 959 (1909); Norris v. Graham, 33 Md. 56 (1870); Cropper v. Pittman, 13 Md. 190 (1859); Northern Central Ry. v. Prentiss, 11 Md. 119 (1857); Ellicott v. Turner, 4 Md. 476 (1853); Elder v. Warfield, 7 Har. & J. 391 (1826).

this case Feiler's promise was not to Maryland National Bank and there is no contention that it fell outside of the Statute of Frauds because of the main purpose rule.

## II

When the $250,000 note of Togs, Inc. was not paid at maturity, the obligation was extended by the bank with the consent of the Plaintiffs at increased interest and ultimately was placed on a demand basis. The loan was not retired until June 17, 1977. Feiler was advised by the Plaintiffs in a letter dated June 15, 1973 of an extension to October 17, 1973 at 8½%. Demands on Feiler for his share of the interest were made on October 19, 1973, January 24, 1974 and on August 9, 1974. Suit was filed October 25, 1974. There is no evidence that Feiler expressly consented to any extension. Relying on principles of suretyship, he contends that the extension of the principal's obligation without his consent operated as a discharge of his obligation. The courts below correctly rejected this contention.

There was no express element of Feiler's agreement with the Plaintiffs which terminated the indemnification obligation as of the due date of the December 18, 1972 note executed by Togs, Inc. Indeed, Feiler's letter of December 20, 1972 reflects that the parties contemplated possible loan renewal beyond June 18, 1973 since they anticipated that repayment by Togs, Inc. would be from the proceeds of the public offering, an event which was not certain to occur by June 18, 1973 as subsequent events so forcefully demonstrated. Further, the note executed by Togs, Inc. provided that the "makers, endorsers, sureties and guarantors agree and consent that the holder may, without notice, extend the time of payment of this note in whole or in part and from time to time by notation hereon."

Decisions in other states have not treated the obligation to indemnify a surety as terminated because of an extension of time, without the indemnitor's consent, for the performance of the principal's obligation, where there is an absence of

prejudice to the indemnitor. In *Northcott v. Nieman,* 117 W. Va. 313, 185 S.E. 217 (1936) the landlord leased for 25 years with the right in the tenant to build and ultimately to buy. A construction loan was obtained by the tenant, secured by a deed of trust in which the landlord joined. To protect the landlord against loss because of the deed of trust, the tenant, as principal, and certain individuals, as sureties, agreed to indemnify the landlord. Deed of trust notes were extended with the landlord's consent, but without the consent of the sureties on the indemnity bond. The latter obtained an injunction against the landlord suing on the bond, claiming they had been discharged by the extension of time for payment of the principal's obligation. This injunction was reversed. The court reasoned as follows (*id.* at 318, 185 S.E. at 220):

> "An extension of time for payment or performance of the principal obligation does not release an indemnitor against loss from liability, especially where he consents thereto; and this rule has been held to apply, even though the extension of time is given without the indemnitor's consent." 31 C.J., p. 445. "It appears to be the general rule that one who agrees to indemnify a surety or guarantor on a contract is not released from liability by an extension of the time for payment or performance on the contract, although this extension is given without his knowledge or consent. Thus, it is held that one who contracts to indemnify a surety or guarantor on a note is not freed from his obligation by a renewal of the note, or the issuance of a new one by the same parties, when the original note is due, or by any other arrangement extending the time for payment, although this is done without his knowledge or consent." [quoting Annot., *Extension of Time or Other Modification of Original Contract as Releasing Indemnitor of Surety or Guarantor,* 43 A.L.R. 1368 (1926).]

To like effect is *Watanabe v. Ota,* 137 Wash. 368, 242 P. 379 (1926) which arose on demurrer. There the plaintiff cosigned with the debtor a note to a bank. Four individuals then signed a note to the plaintiff for a somewhat larger amount in order to protect the plaintiff against the liability he assumed on the note to the bank. After the note to the bank had been renewed, the plaintiff paid it and sued the makers of the second note. They were held not to have been discharged.

> Their liability is not to the bank, but to the [plaintiff]. It was an obligation to protect him against a liability he assumed, not to pay the obligation creating the liability. The contract was in its nature one of indemnity, and did not render them either primarily or secondarily liable on the obligation given by the [plaintiff] to the bank. It must follow from this that the renewal of the note given the bank did not affect their liability, unless, of course, it in some way operated to their injury. But the contract being in the nature of an indemnity, whether they were or were not injured was a matter of defense, and need not appear as an allegation of the complaint. [*Id.* at 370, 242 P. at 380.]

*Accord, First National Bank v. Deng,* 149 Kan. 454, 87 P.2d 513 (1939); *Spilman v. Smith,* 54 Ky. (15 B. Mon.) 123 (1854); *Buffington v. Bronson,* 61 Ohio St. 231, 56 N.E. 762 (1899); *Eller v. Erwin,* 265 S.W. 595 (Tex. Civ. App. 1924); *Way v. Hearn,* 143 Eng. Rep. 117, 13 C.B. (N.S.) 292 (1862); and Comment, *Third Party Indemnity Contracts,* 39 Neb. L. Rev. 373, 407 (1960). *See also Greene v. Kaufman,* 381 A.2d 5 (D.C. App. 1977); *American Casualty Co. v. Texas Real Estate Commission,* 362 S.W.2d 192 (Tex. Civ. App. 1962).

## III

Plaintiffs complain of the intermediate appellate court's exclusion from the trial court's judgment of all interest paid

by them after the due date of the original note.[5] After
observing that the note was renewed at a higher rate of
interest and was changed to a demand note, the Court of
Special Appeals stated that Feiler "was not a party to that
note, nor did he promise to indemnify the [Plaintiffs] for any
payments made by them on the renewed note." On this same
issue the trial court made the following analysis:

> The indemnity agreement between [Feiler] and
> the plaintiffs, and the guarantee as between the
> plaintiffs and the bank were separate and distinct
> contracts. [Feiler] obligated himself under the
> contract of indemnity and not under a guaranty.
> However, he was not a contractual party to the
> agreement to accept the increase of interest on the
> guaranteed loan when renewed. Therefore, the
> changes in plaintiffs' liability for the increased
> interest on the principal obligation were of no effect
> on the interest rate of [Feiler's] indemnity contract.
> As a result, the indemnity agreement remains the
> same as it was prior to the time the $250,000 loan
> note was renewed at higher interest rates.

For the reasons given in part II, *supra,* Feiler's obligation
to indemnify survived the extension of the loan which the
Plaintiffs had guaranteed. Feiler's indemnification ran to
loss which the Plaintiffs might incur because of their guar-
anty of Togs' obligation. That loss included interest charged

---

**5.** The trial court had included interest at 7½% from December 18, 1972
to June 17, 1977, but did not charge Feiler with the portion of the interest
in excess of 7½% which was paid by the Plaintiffs during the loan
extension.

In their brief in this Court, the Plaintiffs have suggested that the trial
court judgment be modified to include this increased interest as part of the
indemnitees' loss. That issue is not before us. There was no cross-appeal by
the Plaintiffs from the judgment. *Compare* State Commission on Human
Relations v. Amecon Div., 278 Md. 120, 123 n.2, 360 A.2d 1, 3 n.2 (1976).
*and* Capron v. Mandel, 250 Md. 255, 259, 241 A.2d 892, 894 (1968) *with*
Fennel v. G.A.C. Finance Corp., 242 Md. 209, 229, 218 A.2d 492, 503 (1966).
The matter was not raised by the Plaintiffs in the Court of Special Appeals
or in their petition for issuance of the writ of certiorari. Board of Education
v. Education Association, 286 Md. 358, 367 n.10, 408 A.2d 89, 93 n. 10
(1979).

on the loan until it was paid in full, at least up to 7½% under the indemnity contract.

When it came to the inclusion of interest in computing the loss which the Plaintiffs incurred, the Court of Special Appeals seems to have considered that Feiler's indemnification related only to a guaranty of the specific note of December 18, 1972 which had a six months due date, and not to a guaranty of payment of the underlying obligation of Togs evidenced by that note. It is inconsistent to treat the indemnification as surviving renewal as to the principal sum advanced by the bank to Togs, but as terminating upon renewal as to any interest on that same principal obligation.

The authorities reviewed and cited in part II do not view the surety-indemnitee as having an obligation to the indemnitor to pay the debt of the principal instantly upon the principal's default. Clearly, if the surety does not consent to an extension, but is unable to pay promptly, interest accumulating on the principal obligation until satisfied in full by the surety would be recoverable as part of the surety's loss under the indemnification. Further, even where the surety has consented to renewal of the loan guaranteed, interest paid by the surety during the extension period has been included, without discussion, in the surety's subsequent judgment against the indemnitor. *Greene v. Kaufman, supra; Buffington v. Bronson, supra.* Indeed, when the indemnitee was justified in defending, albeit unsuccessfully, a suit by the creditor on the guaranty, an indemnification against loss has been held to include the counsel fees and other defense expenses. *Eller v. Erwin, supra.*

We have recognized that " '[a]s a general rule, and unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees.' " *Jones v. Calvin B. Taylor Banking Co.,* 253 Md. 430, 441, 253 A.2d 742, 748 (1969). Interest paid by Plaintiffs here, at least up to the original 7½% rate, is similarly an element of damage.

Feiler, relying on a general principle of suretyship, contends that the change to a demand note, and the increase in the interest rate, without his consent, constitute material modifications of the principal's obligation which result in his discharge. Some indemnity contract cases have borrowed that concept from suretyship. It has been said that " 'any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity,' " *Hiern v. St. Paul-Mercury Indemnity Co.,* 262 F.2d 526, 529 (5th Cir. 1959), or will operate to release the indemnitor "at least to the extent of the prejudice," *Denton v. Fireman's Fund Indemnity Co.,* 352 F.2d 95, 99 (10th Cir. 1965), or "will release [the indemnitor's] obligation to the extent of the prejudice." *New Amsterdam Casualty Co. v. Lundquist,* 293 Minn. 274, 284, 198 N.W.2d 543, 549 (1972). Assuming, *arguendo,* the applicability of this rule to indemnity contracts, Feiler has demonstrated no prejudice here. The increased interest which the Plaintiffs paid in connection with the extension of the loan was held not to be within his indemnity contract. He is required to pay, not one-sixth of the Plaintiffs' total interest payments, but one-sixth of the interest at the rate called for under the terms of the loan to Togs, Inc. as originally made.

## IV

The intermediate appellate court reduced by $50,000 the $250,000 principal indebtedness of Togs which the trial court had utilized in computing its judgment against Feiler. The Court of Special Appeals concluded that the last $50,000 of the line of credit was advanced to Togs after June 18, 1973. Because there was sufficient evidence to support the trial court's finding, it should not have been disturbed.

This issue revolves around the interpretation of the bank's loan ledger for Togs, Inc., a copy of which was placed in evidence. This ledger recorded not simply the transactions on the subject loan, but related to all of the advances, and

loan renewals, made to Togs, Inc. Guarantors varied with the different loans. Jay Flagg, a vice president of the lender, testified for the Plaintiffs. There was introduced through him an exhibit which he compiled from the bank records and which isolated the advances on the $250,000 line of credit. It reflected that the last $50,000 consisted of two advances made in April 1973, each in the amount of $25,000. When cross-examined from the copy of the original loan ledger, which reflects only two advances to Togs in April 1973, Flagg included the two $25,000 advances in April as made under the subject loan. On redirect, Flagg stated that the cross-examination did not lead him to alter any of the information set forth in the exhibit which he had derived from the ledger.

Feiler's point is that the ledger reflects the two advances in April to have been debited to a loan due June 18 on which there were seven endorsers, *i.e.,* the four Plaintiffs, Kahn, Feiler, and an N. Shaffier. From this Feiler concludes that the $50,000 advanced in two increments in April 1973 must have related to some other loan involved in the general account of Togs, Inc. That is merely one inference. Another inference is that the ledger entry of the particular endorsers was in error and that Flagg's analysis of the bank records, and Flagg's testimony, were correct. Accordingly, the Court of Special Appeals was in error in stating that the record revealed only $200,000 of the original $250,000 note had been drawn against by June 18, 1973.

V

At oral argument in this Court Feiler principally emphasized that the trial court's written opinion did not expressly address his argument, there advanced, that the Plaintiffs failed to mitigate damages. He urges that this case should, at a minimum, be remanded for a determination of that issue. The argument rests on Feiler's December 20, 1972 letter and a discussion of it between Rosenbloom and Chanoff who viewed it as "weaseling" on Feiler's part. In his

trial testimony, Feiler said that he had not agreed to indem-- nify the Plaintiffs in conversation at the December 19, 1972 directors meeting, that his letter the next day set forth the condition under which he was willing to accept a one-sixth responsibility for the loan, and that Farber, acting for the other directors, rejected his written proposal. The mitigation of damage contention was an alternative defense. If the trial court declined, as it did, to accept Feiler's version of the facts, then the letter, with its unacceptable condition, is said to be a breach by anticipatory repudiation of the oral agreement made the preceding day, giving rise to a duty of the Plaintiffs to mitigate damages. See *Dugan v. Anderson,* 36 Md. 567 (1872). Consequently, Feiler says, the Plaintiffs should not have had Togs, Inc. draw down any loan advances, after the $50,000 draw of December 18, 1972, while looking to him for indemnification, so that he indemnifies as to loan principal only for one-sixth of $50,000.

It is unnecessary to remand for a fact finder's evaluation of this argument. Feiler's letter is insufficient, as a matter of law, to be an anticipatory breach. Because the trial court found that the oral indemnification agreement was unconditional, Feiler's letter was merely an offer to amend the oral contract to include the condition. "A mere request for a change in the terms or a request for cancellation of the contract is not in itself enough to constitute a repudiation." 4 A. Corbin *On Contracts* § 973, at 905-06 (1951).

Our cases have held that "[o]rdinarily, in order to consti- tute anticipatory repudiation, there must be a definite, specific, positive, and unconditional repudiation of the contract . . . ." *C.W. Blomquist & Co. v. Capital Area Realty Investors Corp.,* 270 Md. 486, 494, 311 A.2d 787, 791 (1973).

So a request by the buyer of a truck that the seller withhold action on the purchase order did not amount to a definite and specific anticipatory breach. *Weiss v. Sheet Metal Fabricators,* 206 Md. 195, 110 A.2d 671 (1955). Nor did a demand by the purchaser of realty, who doubted the ability of his vendor to perform, for the vendor either to deliver title or to refund the deposit. *Friedman v. Katzner,*

139 Md. 195, 114 A. 884 (1921). In *Harrell v. Sea Colony, Inc.,* 35 Md. App. 300, 370 A.2d 119 (1977) a trial court finding of anticipatory breach by the purchaser of realty was reversed, even though there was evidence that the purchaser, in advance of the time for settlement, had told the vendor he wanted to cancel the contract and did not want to proceed to settlement. This was held to be merely a request for a mutual rescission. *Cf. Stefanowicz Corp. v. Harris,* 36 Md. App. 136, 373 A.2d 54 (1977) (purchasers who state that they "hereby cancel their contract" have positively and unconditionally repudiated).

In this case Feiler's effort to obtain a modification of the existing indemnity contract could not be a repudiation of the contract.[6]

*Judgment of the Court of Special Appeals vacated.*
*Case remanded to that court to affirm the judgment of the Superior Court of Baltimore City.*
*Costs to be paid by Alfred W. Feiler.*

---

**6.** While relevant only if the requested condition had been incorporated into the contract, there is no evidence that there was any change in the executive committee as established at the December 19, 1972 directors meeting until Feiler resigned from the board.