## MORRIS M. FRIEDMAN ET AL.

### vs.

### LAIBESH KATZNER.

*Contract for Sale of Land—Anticipatory Breach—Demand for Return of Deposit.*

When, in anticipation of the time of performance, one definitely and specifically refuses to do something which he is obligated to do, so that it amounts to a refusal to go on with the contract, it may be treated as a breach by anticipation, and the other party may, at his election, treat the contract as abandoned, and act accordingly.     p. 201

While a demand for the return of a deposit on a contract for the sale of land, if made with the intention of repudiating the contract, involves a breach thereof, such is not the case in the absence of any such intention.     p. 202

A demand by a purchaser of land for the return of his deposit on the contract, while a fact to be considered in connection with the other facts in the case, in determining whether he thereby intended to repudiate the contract, cannot, when associated and connected with an alternative demand that the vendor perform the contract, be treated as amounting in law to a positive and unequivocal repudiation of the contract, but the question is for the jury.     pp. 201-202

*Decided June 28th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.)

Action by Laibesh Katzner against Morris M. Friedman and Anna F. Friedman, his wife. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*James U. Dennis,* with whom was *John S. Strahorn* on the brief, for the appellants.

*Webster S. Blades* and *Harry B. Wolf,* submitting on brief, for appellee.

OFFUTT, J., delivered the opinion of the Court.

The appellee in this case sued the appellants in the Superior Court of Baltimore City for the recovery of money paid as a deposit by him on account of the purchase of a house and lot on Eutaw Place in the City of Baltimore, which the appellants failed to convey to him within the time limited by the contract of sale. The case was tried before the court, sitting as a jury, and the trial resulted in a verdict and judgment for the plaintiff, from which judgment this appeal is taken.

The plaintiff's contention is that, at the time the defendants agreed to sell him the property, they neither had title to it, nor any valid contract under which they could obtain a merchantable title, and that they did not acquire title thereto and were not able to convey the same to the plaintiff within the time limited by the contract, and that he, the plaintiff, was therefore entitled to a return of the money he had paid as a deposit on account of the purchase. The defendants' position is that, while they did not have title to the property. at the time they agreed to sell it to the plaintiff, and received the deposit from him, yet they could have obtained title to it in time to have performed their contract, but that before that time the plaintiff repudiated the contract and so relieved them of any obligation to acquire the title in time to have conveyed it to the plaintiff before the expiration of the time limited by the contract.

The record contains but one exception, and that relates to the court's rulings in refusing the defendants' first and second prayers, which, in effect, were demurrers to the evidence.

The only question we are called upon to consider, therefore, is whether there is in the case any evidence legally sufficient to entitle the plaintiff to recover under the pleadings.

The plaintiff, after offering in evidence a deed from Louis Glaser and others to Morris Friedman dated July 29th, 1920, conveying to him the property in question, testified that on January 26th, 1920, he and Friedman, the grantee in that deed, entered into the following contract for its purchase: "Received from Laibesh Katzner five hundred dollars as a deposit on property, 2104 Eutaw Place, selling price ten thousand and seven hundred dollars. In fee. It is further agreed that house is to be settled on April 1st, 1920, for cash. Time being essence of contract. Taxes, water rents, insurance to be adjusted to date of settlement. Articles such as mirror in parlor, hall rack, stair carpets, carpets on floor (second floor front) awnings on premises go with the house. Gas range on premises, all shades (window) go with the sale," and that upon the execution of this paper he paid to Friedman the five hundred dollars referred to in it. The witness further testified that he did not get the title to the house on the 1st of April because "there were three partners in that house, and one of the wives refused to sign the deed," that after he found out that Friedman could not give him a title to the house he called upon Friedman at his place of business, and asked him why it was that he could not get the house, that Friedman would not talk to him, and gave him no satisfaction, and that the witness then told him that if he, Friedman, could not give him the house, to give him his deposit back, but that Friedman failed to do that; that Friedman was not able on April 1st to give him the house. He further testified that he saw Friedman on several occasions, one of which was in the latter part of March, and in describing that interview he said, "I asked him if he cannot give me the house to give me my deposit back. So he did not answer me at all. He just merely refused to answer. It seems like he was told

from somebody not to answer it." He also said that he saw
Friedman again on or about the first of April with the same
result. On cross-examination he said that the contract was
written by Friedman in his, Katzner's house, on the date of
its execution, that he did not remember having seen the con-
tract under which Louis J. Glaser and others had agreed to
sell the property to Friedman which Friedman was selling to
him, and that up to that time he had not known Louis J.
Glaser, J. Ral Glaser, or Breslau (who then owned the prop-
erty) and had not known Friedman until he met him in con-
nection with the purchase of the house; that after he found
out he could not get the house he learned from one of the
Glasers that Mrs. Breslau, who was not a party to the con-
tract for the sale of the house to Friedman, would not sign
the deed to him. He further testified that he had had an
opportunity of reselling the house, but that it fell through
because the house was occupied by tenants under a lease
which ran for several months; and that he did not ask Fried-
man to give him back his money until he had found that
Friedman could not give him a title to the house. After
referring to an interview with Mrs. Friedman, the appel-
lant's mother, and the circumstances under which he con-
sulted an attorney about the transaction, and having again
stated that in an interview with Friedman he had demanded
that Friedman either give him the house or his money he
was asked: "And you wanted the money back because you
did not think you could get the house?" to which he an-
swered: "Because he admitted he has got no title to the
house."

Friedman, testifying in his own behalf, said that about
a week or ten days after the contract was signed Katzner
came to his place of employment and told him he was going
to have him arrested for obtaining money under false pre-
tenses, that he told Katzner he was employed on a salary and
implored him not to make a noise and told him to go to see
his lawyer, but that Katzner said he would have nothing to

do with his lawyer, that he wanted his money back. He identified a letter from Messrs. Brodie & Sachs, dated March 2nd, 1920, in which they demanded that he return the five hundred dollars deposit. This letter he did not answer but turned it over to his attorneys. The witness further testified that he had entered into a contract with Louis J. Glaser, Abe Breslau and I. Ral Glaser for the purchase of the property in question. That the contract was in writing, dated January 17th, 1920, and signed by the two Glasers and Breslau, and that it was outstanding when he made the contract with Katzner. Under its terms the property was to be settled for on April 1st, 1920; that at the time he and Katzner executed the agreement referred to above, Katzner knew of and had read the Glaser contract, and knew the Glasers and had "dickered" with them for the property before he dealt with Friedman. On his cross-examination he said that, on February 21st, 1920, he brought suit to enforce the specific performance of the contract between him and the Glasers. In rebuttal Katzner was asked this question: "The question is whether or not you knew of the title of this contract between the Glasers and Friedman at the time that you executed the contract with Friedman," to which he replied: "No, sir; I did not know anything about it, and I never knew Mr. Glaser before until after I had found out." It also appeared that the property was finally conveyed by the Glasers to Friedman in July, 1920, after he had paid them an increased consideration for it.

There is other testimony corroborating or contradicting in its several parts that to which we have referred, but since in this inquiry we can only consider the legal sufficiency of the evidence in the case to support the plaintiff's claim, we do not regard it as material.

Since the prayers under consideration concede the truth of the evidence to which we have referred, in dealing with them we must assume the existence of the facts disclosed by it. The facts material to the inquiry before us, concisely

stated, are these: That on January 17th, 1920, Louis J. Glaser, I. Ral Glaser and Abe Breslau, being then the joint owners in fee of the property in question, sold it to Morris Friedman for $9,500, on account of which $100 was paid as a deposit. The contract of sale was in writing and signed by the two Glasers and Breslau and by Morris M. and Anna F. Friedman. Under the terms of the contract the property was to be settled for on April 1st, 1920. The wives of the vendors did not sign this contract and refused to join in any deed conveying the property under it, and, as a result of their refusal to carry out its terms, the property was not conveyed to Friedman until July, 1920, and then only after Friedman had agreed to pay five hundred dollars more for it than the price named in the contract.

On January 26th, 1920, Friedman executed the contract to sell the property to Katzner and received from him a deposit of five hundred dollars. At that time he had no title to the property, which was then owned by the Glasers and Breslau, nor had he any contract under which he could secure a marketable title to it, for while the contract he had was signed by Breslau and the two Glasers, it was not signed by their wives, and in fact he never did secure the property under that contract, for, when he finally received it, it was for a greater and different consideration than that named in the contract. Katzner knew nothing of the Glaser contract when he signed the contract and paid the deposit, and did not know Breslau or the Glasers, nor was he told anything concerning them by Friedman. When he did learn of the situation he went to Friedman and demanded that he be given either the house or the money he had deposited. On March 2nd, 1920, his attorneys wrote Friedman demanding a return of the money and intimating that by its repayment litigation could be avoided. In the latter part of March, 1920, Katzner again demanded of Friedman that he either return the deposit or give him the house. On February 21st, 1920, Friedman brought suit to enforce the specific performance of the Glaser

contract, but he made no reply to Katzner's demand, and on April 1st was without title to the property and was unable to convey it to Katzner. There was nothing in the record to show that he could have secured title to the property any earlier than he actually did, or that he was in any way influenced by Katzner's demands. There was in the case evidence of the facts essential to the plaintiff's right to recover and, while it was contradicted, that conflict could not affect the question of its legal sufficiency. A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract (*Williston, Contracts,* sec. 1288), and may be inferred from the "refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence" (6 *R. C. L.,* 1016), and when "in anticipation of the time of performance, one definitely and specifically refuses to do something which he is obliged to do, so that it amounts to a refusal to go on with the contract, it may be treated as a breach by anticipation, and the other party may, at his election, treat the contract as abandoned, and act accordingly. This principle is well settled and applied in many cases. *Hochster* v. *De la Tour,* 2 El. & Bl. 678; *Roehm* v. *Horst,* 178 U. S. 1; *Cherry Valley Iron Wks.* v. *Florence River Co.,* 64 Fed. 569, 12 C. C. A., 306; *Michigan Yacht & Power Co.* v. *Busch,* 143 Fed. 929, 75 C. C. A. 109; *McBath* v. *Jones Cotten Co.,* 149 Fed. 383, 79 C. C. A. 203." But refusal to perform must be positive and unconditional, *Williston, Contracts,* sec. 1324; 39 *Cyc.,* 1431. Applying these principles to the facts before us, we are unable to say as a matter of law that the plaintiff broke the contract by demanding a return of the deposit. If he had done only that, and if it were clear that in doing so he intended to repudiate the contract, then his action would have amounted to a breach of the contract, but that is not the case. It is true that, in the letter written by Katzner's attorneys, he demanded a return of the deposit, but that letter must be considered in connection with all the other facts in the case, and

from the testimony it could be inferred that he did not so intend it, and that the vendor did not so accept it, because both before and after that letter was written Katzner told the vendor that what he wanted was either the house or his money. Such a position was not only natural but entirely consistent with the willingness to perform the contract, and while, therefore, his demand for the return of the deposit he had made was a fact to be considered in connection with the other facts in the case in determining whether he thereby intended to repudiate the contract, it cannot, in view of its association and connection with the alternative demand that the vendor perform the contract, be treated as amounting in law to a positive and unequivocal repudiation of the contract. Nor are the cases cited by the appellant at all in conflict with that view. In *El Paso Cattle Co.* v. *Stafford,* 176 Fed. 41, the plaintiffs sued to recover a deposit paid under a contract for the purchase of land. The defendants had written the plaintiffs tendering a deed for the property, and there was nothing in the case to indicate that that deed would not have conveyed a good title, but some time after that tender the plaintiff demanded a return of the deposit because they had not been supplied with a sufficient abstract, and because a consent to an assignment involved in the transfer was not in the form required by the contract, and, when asked later what their "position" was, the plaintiffs replied that the letter demanding the deposit was "final so far as the contract was concerned." It was under those circumstances that the court held the demand for the return of the deposit was equivalent to a refusal to perform. In so ruling it acted in conformity with the rule stated above, which is very clearly stated in *Weber* v. *Grand Lodge, etc.,* 169 Fed. 533.

The cases of *Roehm* v. *Horst,* 178 U. S. 1; *Michigan Yacht & Power Co.* v. *Busch,* 143 Fed. 929, and *Wester* v. *Casein Co.,* 206 N. Y. 506, cited by the appellant, relate to commercial contracts, and while not precisely in point support the application of these general principles.

The distinction between these cases and this one is that there the act relied upon was positive and unequivocal, while here it is conditional. There the demand was, "return the money paid under the contract"; here it is, "return the money *or* convey the property."

For the reasons stated we are of the opinion that under the evidence in this case the question as to whether the appellee had committed an anticipatory breach of the contract should not have been withdrawn from the consideration of the jury or the court sitting in lieu thereof, and there was therefore no error in the ruling of the court upon those prayers.

In view of this conclusion, it becomes unnecessary to discuss the other propositions advanced by the appellants, because they are all subsidiary to or dependent upon the proposition that the evidence established as a matter of law that Katzner had been guilty of an anticipatory breach of the contract, which excused the vendors from further performance.

Finding no error in the rulings of the court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*