**PLACID OIL COMPANY, Appellant,**

v.

**J. A. HUMPHREY, G. E. Hall, A. Pollard Simons and William D. McBee, Appellees.**

**No. 16249.**

United States Court of Appeals Fifth Circuit.

May 3, 1957.

Rehearing Denied June 13, 1957.

Hutcheson, Chief Judge, dissented.

Ralph B. Shank, Shank, Dedman & Payne, Dallas, Tex., for appellant, Placid Oil Co.

Lanham Croley and Donald G. Canuteson, Dallas, Tex. (of Golden, Croley, Howell, Johnson & Mizell, Dallas, Tex.), for appellees, J. A. Humphrey and G. E. Hall.

Fred G. Gannon, Dallas, Tex., for appellee, William D. McBee.

H. Bascom Thomas, Jr., Bowyer, Gray, Thomas, Crozier & Harris, Dallas, Tex., for appellee, A. Pollard Simons.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the court without a jury in a suit for damages based on an anticipatory breach of a contract to pay $25,000 as a contribution under a "Dry Hole Contribution Letter Agreement."

The principal questions are: (1) whether the doctrine of anticipatory breach is applicable in Texas to a contract to pay a fixed sum upon the completion and abandonment of a dry hole if there was no initial mutuality of obligation between the parties; (2) whether there was in fact an anticipatory breach by the promisor; and, if the first two questions are answered in the affirmative, (3) what is the correct measure of damages. Supplemental questions are whether the contract did impose mutual obligations on the parties initially and whether, assuming recovery could not be had for a breach of the contract, a recovery could be had for quantum meruit. In the view we take of the case it is not necessary for us to reach these subsidiary questions.

This case is reported at 142 F.Supp. 246. In the able and well reasoned opinion of the district court the facts are set out in detail, and they will not be repeated here except insofar as is necessary to an understanding of our discussion of the legal principles. So, too, do we adopt much that is said by the trial court in its reasoning. With its judgment we fully concur.

Appellant agreed that if appellees would drill a test well for oil or gas on property owned or leased by them, and, if after taking it to a depth of 10,000 feet or to the oil creek sand of Ordivician age (whichever is the lesser depth) the well proved to be a dry hole [1] appellant would pay as a "dry hole contribution" the sum of $25,000. The drilling continued, as found by the trial court on ample evidence, strictly in accordance with the contract to a depth of 10,025 feet. Thereupon appellees' agent approached appellant to sound it out as to whether it was satisfied that the hole was in fact a dry hole. The trial court expressly found that this did not amount to a demand by appellees for the payment of the $25,000, which would of course not be due unless and until the well should be plugged and abandoned. Appellant deferred replying for twenty-four hours, during which time appellees permitted the drilling rig to lie idle at the well site. Thereafter, on July 28, 1955, appellant sent a telegram to appellees [2] stating that a certain type of testing must be carried out by appellees as to eight different horizons and that the failure to test at these horizons in the manner specified would be "a material

---

[1] In which event it was required that appellees make a "completion and plugging report" evidencing the plugging of the hole in accordance with the law of the state of Texas.

[2] As this telegram was treated by appellees and by the trial court as the anticipatory breach, it is here reproduced in full:

"Messrs Joe A Humphrey, A Pollard Simons, G E Hall and William D McBee—Delaney Drilling Co Contl Bldg Dal—

"Reference made to dry hole contribution agreement of April 8, 1955, under which S A Johnson No. 1 is drilling. You are obligated to properly test all horizons in well which appear promising of producing oil or gas. To do so you must set pipe and conduct tests by perforating and sandfacing the following zones: 8142–8160; 8176–8190; 8240–8300; 8390–8450; 8570–8676; 8832–8870; 8955–8992; and 9200–9350. We request that well be properly tested as herein provided. The failure of which will be a material breach of agreement and a forfeiture of all your rights under same—

"Placid Oil Co.
"W. F. Dalton."

breach of agreement and a forfeiture of all your rights under same."

The trial court found that immediately after receiving this telegram appellees excluded appellant from the rig and denied further information as to the drilling operation to appellant and otherwise treated this telegram as an anticipatory breach of the contract. Thereupon, after consultation with their counsel, appellees decided to extend the well to a depth of 10,250 feet. At a depth somewhat lower than the 10,025-foot level oil was encountered in sufficient quantities to cause appellees to complete it as a producing well.[3]

The trial court found that the requirements set out in the telegram were not in accordance with the contract and that it would have cost a minimum of $75,000 for the appellees to have completed the tests as demanded in the telegram. It was undisputed that the cost of the drilling to appellees up to the time of the receipt of the telegram was approximately $121,000. It was also undisputed that the cost of plugging the well would have been $2,000.

The trial court reasoned that appellant's telegram was tantamount to saying: "Unless you complete the additional testing in the manner herein stated (which, as stated above, would cost at least $75,000) we will not pay the $25,000 even though you plug the hole and abandon it in accordance with the contract." Finding, as it did, that the additional testing was not required by the original contract but was a very substantial modification of its terms, the trial court held that this was a complete and unambiguous renunciation of the contract and amounted to an anticipatory breach. This, the court held, "destroyed" the contract at the moment it was treated as a breach by the other parties. The court held that they did so, as evidenced by their immediate exclusion of appel-

lant's agent from the rig and the denial of information to him thereafter. The court further held that the anticipatory breach destroyed the contract completely at that point of time and there was no further obligation on the part of appellees to plug and abandon the well. They were at liberty either to abandon it or to use it in any manner they saw fit, including further drilling against the prospect that this procedure would be productive of oil or gas at a lower depth. He found that the only obligation of appellant under the contract was to pay $25,000; that upon its breach of the contract the damages to appellees were represented by the difference between the agreed amount and the $2,000, which it would have cost appellees to carry out their agreement had the contract not been breached. He therefore gave judgment to appellees in the sum of $23,000.

■ Appellant does not seriously contend that the doctrine of anticipatory breach does not exist under the Texas law. In arguing limitations on the doctrine, in fact, it concedes that it is applicable in a proper case. The trial court and appellees rely heavily on Pollack v. Pollack, Tex.Com.App., 46 S.W.2d 292. This case fully supports the trial court's determination that the doctrine of anticipatory breach is no stranger to the Texas law. It also identifies Texas with a minority view to the effect that the doctrine is not restricted to those cases where the contract is still fully executory on both sides. See also Kilgore v. Northwest Texas Baptist Educational Ass'n, 90 Tex. 139, 37 S.W. 598, and Moore v. Jenkins, 109 Tex. 461, 211 S.W. 975.

■ Appellant cites no Texas authorities for the precise proposition that the doctrine of anticipatory breach does not apply to such a breach of the obligation of a promisor whose promise becomes binding only if acted upon by the other

---

3. There is some dispute as to whether this is a commercially profitable operation; the maximum value claimed by appellant is illustrated by the statement in its brief that up through January 1956 it had produced oil of the value of $11,040.18, and that its capacity was an average of 15 barrels per day. In the view we take of the case the value of this production is not significant.

party, as distinguished from a promise that is given in exchange for a promise by the other party. Cases of other jurisdictions are cited which raise some question as to the application of the doctrine in the case of a unilateral agreement. These cases are not persuasive except for the proposition that no part of a promise is binding and no breach of it is actionable unless and until it is supported either by a corresponding promise or by performance by the other party. No reason is perceived why a party whose promise is supported only by the performance of the other party should not be held to the same strict accountability for the breach of his contract as is one whose promise is supported by the agreement of the other party. Even assuming, although we do not hold, that this letter agreement did not create mutual obligations, initially there can be no doubt but that when appellees undertook to drill the well strictly in accordance with the specifications, appellant became bound to carry out its undertaking in precisely the same manner as if the contract expressly obligated appellees to drill the well in the first place. Such being the case, the liabilities of both parties became fixed by the terms of the contract, and if either violated its terms by clearly and unequivocally stating that it would not carry them out, such conduct would amount to an anticipatory breach under Texas law.

■ Of course, for such conduct by the promisor, the appellant here, to amount to such a breach, its announcement must be unequivocal. Englehart v. Volunteer State Life Ins. Co., Tex.Civ. App., 195 S.W.2d 798; see also Moore v. Jenkins, 109 Tex. 461, 211 S.W. 975; Kilgore v. Northwestern Texas Baptist Educational Association, 90 Tex. 139, 37 S.W. 598. We must then consider whether the action of the parties here made of this telegram an anticipatory breach within these requirements.

We think the trial court correctly construed the telegram and the actions of the parties as a plain, unequivocal announcement by Placid Oil Company that even though appellees did what was still required for them to do under the contract—that is plug and abandon the well—it would still not carry out its agreement to pay the $25,000 unless appellees *in addition* undertook the extensive and costly tests at the eight horizons which had already been subjected to all the testing required under the original agreement. This placed appellees in a real dilemma. They could have at once plugged the well and have removed the rig and thus have abandoned their $121,-000 hole, fully realizing that they had been told that they would thus not be entitled to the $25,000 payment from Placid, or, relying upon their knowledge that the additional requirements were improperly asserted and that the refusal by Placid was a breach of the contract, they could treat it as a breach and consider anew whether they would risk drilling operations to attempt to salvage something out of the theretofore dry hole.

■ Under the Texas law the moment as of which damages for an anticipatory breach are to be computed is the moment of the breach.

"* * * The damages are to be ascertained as of date of the breach, but such damages are to be full compensation for the loss occasioned by depriving plaintiff of the benefit of the contract. The doctrine of anticipatory breach is not founded on the theory that it moves the performance ahead of the time provided for in the contract, but on the theory that, when a party bound to perform under the contract repudiates it and denies his liability thereunder, he thereby wrongfully destroys the contract so far as he is able to do so, and is liable for damages for such wrongful act. Also, since the injury is to the contract as a whole, the measure of damages is the value of the thing injured or destroyed regarded as an article of property. * * *" Pollack v. Pollack, Tex.Com.App., 46 S. W.2d 292, 293.

■ At that point both parties were free to take such action as they saw fit,

the cause of action for the anticipatory breach having fully accrued in favor of appellees. The fact that they elected to proceed with the drilling and that fortune later smiled, although rather wanly, on their subsequent efforts, in no way affects the cause of action which had already ripened.

We need not discuss in more detail whether the requirement asserted by Placid as to the additional testing actually imposed substantial additional requirements under the contract. We accept the reasoning of the trial court that these requirements were utterly unfounded and that appellant's making them a condition of its continued liability under the contract amounted to an anticipatory breach.

We do not think that the cases cited by appellant, such as Englehart v. Volunteer State Life Ins. Co., supra, or Universal Life & Accident Ins. Co. v. Sanders, Tex.Com.App., 129 Tex. 344, 102 S.W.2d 405, (where the only loss sustained by the promisee from the mere refusal of an insurance company to continue making monthly payments was a delay in the receipt of the instalments) throw any light upon the present situation where under appellant's theory appellees were required to decide whether to spend a minimum of $75,000 additional under circumstances in which the trial court has found that a prudent operator would not have considered doing so, or to plug the well, abandon it, and incur the expense of removing the rig from the property and trust to a suit to recover the $25,000. A repudiation of the contract according to its terms, under these circumstances, might very properly be found to result from a threatened refusal to pay, whereas it might not result from a mere refusal to make a monthly payment until after a dispute is resolved by the court in the disability insurance cases.

■ We find no merit in the contention of appellant that some subsequent correspondence between counsel for appellees and appellant and the furnishing of certain data by an agent of the drilling company to appellant several weeks after the breach compels a holding that there was no acceptance by the appellees of the breach and no termination of the contract. Such action would merely be evidence of a waiver. Waiver being a question of fact its existence *vel non* is for the trial court to decide. The trial court found specifically that plaintiffs "continued at all times subsequent thereto (July 28) to treat the said contract as terminated and never at any time waived such breach or renunciation." This finding was amply supported in the record and cannot be disturbed on appeal.

■■ We finally come to the measure of damages. The only obligation of appellant under the contract was to pay the sum of $25,000. Compensation for the loss of the contract therefore would be a loss of the $25,000. Before becoming entitled to receipt of the sum, if the contract had not been broken, appellees would have had to expend $2,000 to plug the well. The court, relying upon the principle announced in Pollack v. Pollack, supra, and especially on the above quotation from that opinion, found that "compensation for the loss occasioned by depriving plaintiffs of the benefit of the contract" was $23,000. We agree that this is the correct measure of damages. Appellant's contention that appellees suffered nothing because they thereafter salvaged something of their investment in the well by drilling to a greater depth is clearly inappropriate. They had a right to use the dry hole in any manner they chose after the contract was terminated. At that moment they had been entitled to the value of the contract, and that value could not be affected by what appellees did or did not do thereafter, freed of any obligations of the defaulted contract. Moreover, if there were to be any reduction in damages by reason of the subsequent finding of small quantities of oil, the burden would be on the defaulting party to prove that appellees had recovered or would reasonably be expected to recover their entire outlay for the drilling and the cost of operation from the flow of the well before they could say that appellees had not been damaged by their

breach. This appellant did not attempt to do.

We conclude that the judgment of the trial court was correct. It is affirmed.

HUTCHESON, Chief Judge (dissenting).

What is a very simple case, its facts brief and without dispute, has I think by hypostasis been converted into something entirely different in fact and in law from the reality the case itself presents. Because this is so, and I cannot agree with the assumptions on which the opinion of the district judge and that of the majority proceed, I will undertake to state the case as the record presents it and my reasons for believing that the judgment was wrong and ought to be reversed.

It is admitted that the suit arises out of defendant's mailing to plaintiffs a dry hole contribution letter, the opening sentence of which reads:

"When accepted by you, this letter will constitute our agreement, regarding the drilling by you of a test well for oil in Grayson County, Texas, *and our dry hole contribution in support of the well.*" (Emphasis supplied.)

Further providing that the operations should be prosecuted until one of the following depths is reached: "(a) a depth which in the opinion of our geologist is sufficient to test the oil creek sand of Ordivician age; or (b) a total depth of 10,000 feet, whichever is the lesser depth", the letter went on to say:

"In the event that said well is abandoned as a dry hole after reaching either of the depths set out above and provided that you have complied with all the terms and conditions of this letter, *then in that event, and only in that event, we will pay you jointly as a dry hole contribution the sum of $25,000.*" (Emphasis supplied.)

The letter contained other provisions, which in the view I take of the case are not important.

The complaint alleged, *in Par. IV, that the well called for by the agreement was drilled without having encountered the oil creek sand of Ordivician age to a depth of approximately 10,021 feet, said depth having been reached on or about July 27, 1955, at which time plaintiffs ordered the rig on the well shut down and abandoned as a dry hole; and further alleged that on July 27th plaintiffs' representatives contacted defendant's representative and made demand of defendant for the sum of $25,000 specified in the agreement.*

In the pretrial order it was declared that it was *admitted that on or about July 27th the well was drilled without having encountered the Ordivician age sand, to a depth of approximately 10,025 feet. "It was further admitted that the said well has never been abandoned as a dry hole and said well was completed by plaintiffs as a producer of oil and has produced some oil from formations at a depth greater than 10,000 feet beneath the surface each and every month since its completion."* (Emphasis supplied.)

Notwithstanding these admissions, which seem to be conclusive against the right of the plaintiffs to be paid, the recovery has been allowed upon a theory having, in my opinion, no relation to the facts of this case. This theory, as the district judge states it, is that there was *an anticipatory breach of the agreement by defendant and that this released plaintiffs from the conditions on which alone they were entitled to receive the pay the dry hole letter called for.* By this simple *but wholly unorthodox device of labelling defendant's counter-claim, that the contract had not been complied with, an anticipatory breach of agreement,* the defendant is made to pay the amount *which under the agreement it was obligated to pay only upon condition which was never performed, that a dry hole be drilled,* while the plaintiffs are permitted to complete the well as a producer and receive pay for it as a dry hole, in short to have their cake and eat it too.

Ingenious as the theory is and operative as it might conceivably be if the

facts were as they are assumed to be rather than as they are, it seems to me to be clear beyond any controversy that the theory can have no application here for two solid and sufficient reasons.

The first of these is that *no anticipatory breach,* within the dictionary or case law meaning of those terms, has occurred or could possibly, under the undisputed facts, have occurred here. This is so because, as pleaded by plaintiffs and found by the court, all drilling required of plaintiffs had been done and if, as they pleaded, they ordered the rig on the well shut down and the well abandoned as a dry hole, *the contract had then been performed and they were entitled to their pay if, but only if, the well stayed shut down and was abandoned and plugged as a dry hole.*

Under these admitted facts, *it is a complete misnomer to speak of an anticipatory breach.* Such breaches occur only when, *before, and not after,* the contract is completed and there are *things still to be done under it,* there is a breach which prevents or excuses carrying out the promise, on the performance of which the payment of the consideration depends.

A leading case on this whole subject from this court is Southern Cotton Oil Co. v. Heflin, 99 F. 339.

*Here, assuming that defendant's telegram was a breach of the contract and, under the authorities, it seems clear to me it was not but was only a counter-demand to that of plaintiffs,* it was *not an anticipatory breach* but a claim that it was not obligated to pay the amount demanded for the reasons put forward by it. *The result of this would be, not to enable the plaintiffs to bring in the well as a producer while holding the defendant to the payment of the dry hole money, but to entitle the plaintiffs to plug and abandon the well, and sue for the contract price.*

No one I think would claim that if the plaintiffs had plugged and abandoned the well and had then made demand upon defendant for the $25,000 and that demand had been refused, there would have been an anticipatory breach. *Nothing in anywise different occurred here.* When the defendant, for the reasons it deemed sufficient, made a counter demand upon plaintiffs for the tests which it claimed to have the right to demand, thus, for the reasons stated by it, putting up defenses to plaintiffs' demand, it would have a right in any suit upon the demand, without being subjected to the payment of damages for having made the claim, to submit this claim to judicial scrutiny.

Assuming that its claim was unfounded and that it refused to pay the money without cause, its only liability in case the well had been brought in as a dry hole and plugged and abandoned would have been the payment of $25,000 with interest and costs of suit.

No case is cited, none I think can be, holding that when, as here, it is claimed that the contract was fully performed on one side so as to entitle plaintiffs to the contract price, and that the other party refused to perform on his side, the complaining party, *upon showing not that he complied with the condition, precedent upon which the agreed amount was to be paid, but that he did not comply with it,* was allowed as here to recover that amount less certain deductions.

In the second place, even if we assume that there was an anticipatory breach, this would not aid plaintiffs unless we assume for the purpose of the argument that the plaintiffs had not really intended to abandon the well but, knowing the existence of producing sands some three feet or so below where they had ostensibly stopped, they had, as a part of a scheme to obtain for themselves both the dry hole money and the well, merely pretended that the well was a dry hole. This is so because, in the case of an anticipatory breach, *the recovery must be limited to the damages* shown to have resulted therefrom, Southern Cotton Oil Co. v. Heflin, supra, and unless they had intended all along to so manage the situation as to get both dry hole money and a production well (and this in law and in morals they could not do), no damage whatever was shown to the plaintiffs as a

result of the defendant's action. On the contrary, the plaintiffs, considering themselves released, by defendant's action, from the obligation to plug as a dry hole and abandon the well, brought it in as a producer and have received and retained for themselves and will continue to receive and retain all the monies received therefrom, and no evidence was offered to show that the amount received and to be received would not equal or exceed the dry hole money.

I have found no case, I believe none can be found, supporting the result reached below. I respectfully dissent from the affirmance of the judgment.