## SAM L. HARRELL v. SEA COLONY, INC. ET AL.

[No. 605, September Term, 1976.]

*Decided March 14, 1977.*

The cause was argued before GILBERT, C. J., and THOMPSON and MELVIN, JJ.

*Branko Stupar*, with whom were *Faulkner, Shands, Stupar & Tucker* on the brief, for appellant.

*Courtland K. Townsend, Jr.*, with whom was *John Burgess Walsh, Jr.*, on the brief, for appellees.

MELVIN, J., delivered the opinion of the Court.

By written contract, dated 14 November 1972, the appellant (plaintiff below), Sam L. Harrell, agreed to buy, and the appellee (one of the defendants below), Sea Colony, Inc., a Delaware corporation, agreed to sell for $74,900.00 a condominium unit to be constructed by Sea Colony, Inc. in Bethany Beach, Delaware. The contract called for a deposit of $11,235.00 and the balance of the purchase price to be paid "at settlement". The $11,235.00 deposit consisted of $5,000.00 cash paid by Harrell and the execution by him, pursuant to the contract, of a promissory note for $6,235.00, payable "at settlement". Other pertinent parts of the contract were the following provisions:

> ". . . . In the event of a default by the Purchaser hereunder, Seller shall have the right to retain the cash deposit and enforce the Note . . . ."

> \* \* \*

> "Settlement shall take place within thirty (30) days of the posting of written notice to the Purchaser of substantial completion of the above unit, and at the offices of an attorney selected by the Seller. . . ."

> \* \* \*

> "In the event the above unit is not delivered to the Purchaser on or before January 1, 1974, the Purchaser shall have the right to terminate the Agreement and secure refund of deposit."

On 12 January 1974, the parties agreed in writing to extend the limiting date for delivery to 31 December 1974.

On 12 November 1974, Harrell filed a declaration in the Circuit Court for Montgomery County against Sea Colony, Inc. (Sea Colony) and its agent, Carl M. Freeman Associates, Inc. (Freeman), seeking damages for an alleged anticipatory breach of the contract. Harrell claimed that the defendants had "repudiated" the contract and sold the condominium unit to another buyer for more than the contract price. He claimed as damages the $5,000.00 cash deposit as well as the difference between the contract price and the amount for which the unit was sold to the other buyer. Harrell also claimed, in his second amended declaration, punitive damages. After considerable pre-trial maneuverings, the case finally came on for trial before the court sitting without a jury on 6 May 1976.

The evidence before the trial judge consisted of various documentary exhibits and the live testimony of the appellant Harrell and that of Mr. Norman Dreyfuss who was an employee of Freeman. The judge concluded that the appellant had without justification unilaterally cancelled the contract and judgment was entered in favor of both appellees, Sea Colony and Freeman. Because we find the evidence legally insufficient to support the trial court's conclusion that Harrell unilaterally cancelled the contract, we shall vacate the judgment as to Sea Colony. As to Freeman, however, we shall affirm the judgment in its favor.

Regarding Freeman, the most the record shows is that after the contract of sale was executed by Harrell and Sea Colony, Freeman acted only as agent for Sea Colony, its disclosed principal. Freeman was not a party to the contract and its name nowhere appears therein. The general rule regarding an agent's contractual liability to a third party is set forth in *A. S. Abell Co. v. Skeen*, 265 Md. 53, 288 A. 2d 596 (1972):

> ". . . . If an agent, acting for his principal, enters into an agreement with a third party, he is personally responsible under that contract *if the identity of his principal is not fully disclosed and is*

*in fact unknown to the third party.* This concept encompasses two basic factual situations; where the third party knows there is an agency relationship but is unaware of the principal's identity; and where the third party is not even cognizant that an agency relationship exists. [citations omitted]. *Generally, if an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, he is insulated from liability.* [citations omitted]. However, this is subject to exception when the purported principal that is disclosed is nonexistent or fictitious; or when the principal is legally incompetent. [citations omitted]." *Id.* at 56. (Emphasis added.)

Here, there is no indication that in his dealings with Freeman, Harrell was not fully aware that Freeman was no more than an agent for Sea Colony. Nor is there any evidence or claim that Sea Colony, as a corporate entity, is "nonexistent or fictitious" or "legally incompetent".[1] Under these circumstances, we hold that the judgment in favor of Freeman was properly entered, albeit not for the reason given by the trial court.

We turn now to the principal issue raised in this appeal, and that is the correctness of the trial court's ruling that Harrell had breached the contract. There is no evidence that Sea Colony or its agent Freeman ever gave notice, written or otherwise, to Harrell "of substantial completion" of the condominium unit he had agreed to purchase. On 28 May 1974, Harrell requested of Dreyfuss that he be allowed to assign the contract. He was told that he could not do so.[2] Harrell testified that he then told Dreyfuss "that I would be interested in getting out of the contract, that the units were

---

[1]. The fact that as a foreign corporation Sea Colony may have failed to comply with Code Art. 23, § 90 (qualifying to do business in this State), does not affect the validity of the contract or Sea Colony's liability thereunder. *See,* Code Art. 23, § 91.

[2]. The contract provided that it "shall not be assigned or transferred without written consent of the Seller".

selling for substantially more than my contract price, we all knew this, and I asked them if they would be interested in taking my contract back and reselling the unit, they could make any additional profit on it, if they could, and he said that he would look into the matter and he would be in touch with me". Mr. Dreyfuss, testifying for the defendants, corroborated much of Harrell's testimony concerning this conversation and did not contradict any of it. He said:

> "Mr. Harrell stated he wanted to cancel the contract, did not want to proceed with settlement, and indicated that he wanted another disposition of his deposit. He did discuss the matter of the assignability, and I informed him again it was not assignable, and that was pretty much the gist of the conversation.
>
> He told me that the reason was his personal financial situation, which was such that he felt he could not proceed with the purchase of this unit."

It was this 28 May conversation that the trial court seems principally to have relied upon to conclude that Harrell had anticipatorily breached the contract. We think the conclusion was clearly erroneous, particularly in view of subsequent events.

Following the 28 May conversation between Harrell and Dreyfuss, Dreyfuss sent Harrell a letter in mid-July enclosing a "cancellation *request* which must be signed by you in order for us to process *your release*". (Emphasis added). The letter continued:

> "Please detail the reasons *for your request*, and the factors effecting your decision not to proceed with the settlement of Unit 901-S, Phase II.
>
> Once we receive this information we will be able to proceed with the determination on the disposition of your deposit". (Emphasis added).

Harrell responded with a letter dated 17 July 1974 as follows:

"Dear Mr. Dreyfuss:

Enclosed herewith is the Release relative to the above. You will note that I have predicated this upon the refund of my deposit and execution of the Release by Sea Colony by July 25th. This is necessary due to the proximity of the completion of the building so that unless Sea Colony is going to release me from the Contract and refund my deposit I will need as much time as possible to take the necessary action to protect my interest in this matter.

Thank you for your consideration in this matter."

The "Release" enclosed with Harrell's letter was the "Cancellation Request" form sent to him in mid-July. He stated therein that he *"wishe[d] to rescind* his Agreement for the following reasons: Personal financial considerations and the refusal of Sea Colony to allow the assignment of this contract. *This Release is contingent upon refund of deposit by July 25, 1974"*. (Emphasis added).

On 18 August 1974, Sea Colony entered into a contract with a third party to sell the condominium unit for $82,000.00, i.e., $7,100.00 more than the original contract price that Harrell had agreed to pay. In the meantime, so far as the record discloses, there had been no communication between Harrell and Sea Colony or its agent. Thereafter, Harrell received the following letter from Freeman, dated 23 August 1974 — five days after Sea Colony had re-sold the unit to a third party:

"Dear Mr. Harrell:

*We are accepting your request to cancel* your unit number 901-South of Sea Colony Phase II. However, due to your being unwilling to comply with the terms of the contract, we are keeping your deposit as liquidated damages." (Emphasis added).

This letter was followed by another from Freeman, dated 28 August, 1974:

"Dear Mr. Harrell:

Enclosed is an executed release which relieves you

of any further obligation towards the purchase of a home is Sea Colony. Enclosed you will find your cancelled Promissory Note in the amount of $6,235.00.

We are sorry that you are unable to proceed with the purchase of one of our homes. If in the future we can be of service, we would be pleased to have the opportunity to serve you."

The "executed release" enclosed with this letter consisted of the same "Cancellation Request" form that Harrell had forwarded to Freeman with his letter of 17 July 1974. The form contained a space for "Agency Approval" and was executed by an "authorized officer of seller". The executing officer, however, had crossed out Harrell's statement on the form that "This Release is contingent upon refund of deposit by July 25, 1974".

In our view, Sea Colony unilaterally attempted to convert Harrell's *request* for a mutual rescission of the contract to an anticipatory breach or repudiation on his part.

In 6 Corbin, *Contracts*, § 973, the standard for determining an anticipatory breach of contract is set forth:

"In order to constitute an anticipatory breach of contract, *there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.* Doubtful and indefinite statements that the performance may or may not take place and statements that, under certain circumstances that in fact do not yet exist, the performance will not take place, will not be held to create an immediate right of action. *A mere request for a change in the terms or a request for cancellation of the contract is not in itself enough to constitute a repudiation.*" (Emphasis added).

Measured against that standard, we think the evidence in this case falls short of warranting a finding that Harrell

breached his contract. Sea Colony argues that Harrell's statements to Dreyfuss in their 28 May conversation that he (Harrell) "wanted to cancel the contract" and "did not want to proceed with settlement" because his "personal financial situation . . . was such that he felt he could not proceed with the purchase of this unit" amounted to an impermissible unilateral cancellation of the contract and that Sea Colony was therefore justified in retaining Harrell's $5,000 cash deposit and in re-selling the property to a third party. Sea Colony concedes that Harrell's "Cancellation Request" in July "was simply an offer of the appellant to rescind". It contends, however, that the "contract at that time was already breached" by Harrell and therefore Sea Colony "was under no obligation to even consider" the rescission offer.

As evidence of Harrell's alleged anticipatory breach of contract, in addition to Harrell's 28 May conversation with Dreyfuss, Sea Colony points to the fact that Harrell failed to answer requests from Sea Colony to choose which of two attorneys' offices he preferred as the location for settlement. As we have already noted, the contract provided that "Settlement shall take place within thirty (30) days of the posting of written notice to the Purchaser of substantial completion of the . . . unit, and *at the offices of an attorney selected by the Seller*." (Emphasis added). In early April 1974, Harrell received a letter from Freeman indicating that the "Seller" had "selected" two alternative law firms at which settlement would take place — one located in Delaware and one located in Bethesda, Maryland. The letter asked Harrell to "indicate which location would be more desirable for you". The letter concluded with this statement: "Once we have received your preferences, the attorney's office will be contacting you with regard to more specific information". Harrell did not reply to this letter, nor to an identical one he received in early May. His failure to reply can not be regarded as even a partial breach of contract, for there is nothing in the contract imposing upon him a duty to do so — and, as we have already indicated, there is no evidence that at the time he received these letters the

triggering event for scheduling a settlement (that event being written notice of substantial completion of the condominium unit) had occurred, or that he ever refused to attend a settlement, or otherwise refused or failed to fulfill any obligation imposed upon him by the contract.

In summary, we hold that the evidence as a whole is legally insufficient to permit a finding that there was "a definite and unequivocal manifestation of intention" on Harrell's part that "he . . . [would] not render the promised performance when the time fixed for it in the contract arrive[d]". 6 Corbin, *Contracts, supra. See also, Friedman v. Katzner,* 139 Md. 195, 114 A. 884 (1921), where the Court of Appeals, in discussing the doctrine of anticipatory breach, made it clear that the alleged repudiator's "refusal to perform must be positive and unconditional" in order that it may be treated as an anticipatory breach.

Because the trial court found that Harrell had breached the contract, it did not reach the precise issue of whether or not Sea Colony was guilty of an anticipatory breach as alleged by Harrell when it (Sea Colony) resold the property to a third party. Although it may be said that the trial court did, at least by implication, determine that issue, it did not do so in the context of a non-breach by Harrell. We think the issue should now be decided in that context by the court below upon remand rather than by us in the first instance. Md. Rule 1085. We think the issue can be determined by the trial court on the present record and see no necessity for further evidence to be taken. We point out, however, that on the evidence before it a finding by the trial court that Sea Colony breached the contract of sale may not be required. On the evidence, another possible finding would be that there was a mutual rescission of the contract effected by the words and conduct of the parties. Under the particular circumstances of this case, these two possible alternative findings (a breach by Sea Colony or mutual rescission) are mutually exclusive. If the latter finding be made, it would seem that Harrell is entitled to the return of his $5,000.00

deposit. If the former finding be made, he may, in addition to the deposit, be entitled to further damages for Sea Colony's breach.

> *Judgment for appellee Carl M. Freeman Associates, Inc. affirmed.*
> *Judgment for appellee Sea Colony, Inc. vacated.*
> *Case remanded for further proceedings not inconsistent with this opinion.*
> *Costs to be paid by appellee Sea Colony, Inc.*