In re WBZE, INC., Debtor.

WBZE, INC., Plaintiff,

v.

ARAB NETWORK OF AMERICA, et al., Defendants.

Civ. No. PJM 97–3567.

United States District Court, D. Maryland.

May 19, 1998.

Stanley R. Jacobs, Rockville, MD, for plaintiff.

Edward Lee Rogers, Rogers & More, Washington, D.C., Alfred Lawrence Toombs, Greenbelt, MD, for defendants.

*OPINION*

MESSITTE, District Judge.

This matter is before the Court on the objections of Defendant ANA Radio Network, Inc. to the Proposed Findings of Fact and Conclusions of Law submitted by the Bankruptcy Court. Since this is a non-core matter, the Court exercises *de novo* review. 28 U.S.C. § 157(c)(1); Bankr.Proc.Rule 9033(d). The Court has reviewed the transcript of the trial, the exhibits submitted by the parties, the Proposed Findings of Fact and Conclusions of Law, and ANA Radio's objections to same. The Court has also heard oral argument on the objections.

Upon consideration of the entire record, the Court adopts some but not all of the proposed findings of fact and reaches in a few important respects, conclusions of law different from that of Bankruptcy Court.

The Court will enter judgment in favor of WBZE against ANA Radio in the sum of $19,136.49.

### I.

At all relevant times in these proceedings, WBZE, Inc. owned radio broadcast facilities in Indian Head, Maryland.

WBZE had a Time Brokerage Agreement (TBA) with Arab Network of America, Inc., a Pennsylvania corporation, that ran from September 29, 1989 to September 28, 1992. As the term of the TBA ended, WBZE entered into a second TBA with a related but separate entity, ANA Radio Network, Inc., a Virginia corporation. The term of the second TBA was to run from October 1, 1993 through October 1, 1996.

Eventually WBZE sued both Arab Network and ANA Radio for breach of the two TBAs for failure to pay monies allegedly due. A default judgment in the amount of $163,-

521.66 plus $120 costs was entered against Arab Network.[1] As for ANA Radio, following trial the Bankruptcy Court held that it was not liable for Arab Network's obligations under the 1989 TBA, but that it was liable for breach of the 1993 TBA. ANA Radio's central objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law is to the proposal that it pay the remaining monthly fees under the 1993 TBA, $389,997.00.[2]

## II.

WBZE presents a swirl of facts relating to the two defendant corporations, among other things: That the TBAs were purportedly designed to provide control of the radio broadcast facility by individuals not U.S. citizens; that the same individual, Mohammed Al–Bedrawi, was President of both Arab Network and Arab Radio; that Al–Bedrawi reportedly sold ANA Radio to ANA Holdings, Inc., a group headed by King Fahd's relatives, a fact WBZE did not become aware of until shortly before trial; and that Al–Bedrawi and others engaged in extensive misappropriation. None of this, in the Court's view, is relevant for purposes of this proceeding.

Except as follows, the Court adopts the findings of fact and conclusions of law proposed by the Bankruptcy Court.

## III.

The 1993 TBA provided for two "Events of Default" relative to the performance of a TBA between a radio station and a broadcaster:

1) The "discontinuance of all operations or all business of WBZE or ANA Radio by law or otherwise for any reason whatsoever" (§ 11.1(f)); and

**1.** No objection has been filed to the Bankruptcy Court's proposed entry of judgment against Arab network in this amount and the Court will accordingly enter judgment on the default at this time.

**2.** ANA Radio also disputes the proposal that it pay WBZE $19,136.49 for incidental costs and expenses under the second TBA. Although ANA Radio believes it should not be held liable for such costs or fees beyond the date it left the station, it does little more than assert without

2) The "admission by ANA Radio and WBZE, in writing, that they cannot meet its obligations under [1993 TBA]" (§ 11.1(g)).

There is no question that during the period covered by the second TBA, WBZE was beset with serious financial difficulties owing at least in part to the failure of Arab Network to pay rent and other operating expenses during the existence of the first TBA. As a result, WBZE's broadcast equipment began to deteriorate noticeably. Not surprisingly, WBZE began to press ANA Radio during this time for payment of the monies due from Arab Network.

WBZE's efforts came to a head in early January 1996. On January 3, WBZE attorney Robert Kostecka faxed a letter to Mohamed Hakki at ANA Radio in which he called attention to Arab Network's failure to pay certain amounts past due and suggesting that "unless the present situation is resolved, WBZE Radio could be forced to terminate its Time Brokerage Agreement with ANA Radio Network Inc. and to go off the air." Kostecka referred to Arab Network as "the predecessor in interest to ANA Radio Network Inc."

The next day, January 4, Kostecka faxed Hakki another letter, advising that "if the situation outlined in my correspondence to you dated January 3, 1996 . . . is not immediately resolved, WBZE will be forced to go off the air as of 5:00 p.m. January 5, 1996."

ANA Radio did "not go gentle into that good night." [3]

On January 5, its attorney Gordon A. Coffee telecopied Kostecka, advising that as of that afternoon ANA Radio had broadcast the following message on the hour for several hours:

more that the costs and fees should be prorated and adjusted. Not only is there no basis for the suggested proration; it appears that all the items comprising the $19,136.49 had accrued as of the time of ANA's departure from the station. Accordingly, the Court adopts the Bankruptcy Court's proposed conclusion that ANA Radio pay the $19,136.49.

**3.** Dylan Thomas, *Do Not Go Gentle Into That Good Night*

WNTL has notified us that due to circumstances beyond our control broadcast services may cease at 5:00 pm EST today, Friday, January 5, 1996. Should an interruption in our broadcast occur we assure you that we will resume broadcast as soon as possible. The interruption shall affect the Washington, D.C. area only. We apologize in advance should this incident occur and state again that this is due to circumstances beyond the control of ANA Radio Network, Inc.

Coffee acknowledged that ANA Radio had discontinued this message upon receiving word from Kostecka that WBZE "will honor its contractual obligations until 5:00 p.m. on Tuesday, January 9." But Coffee also cautioned that, "(g)iven WBZE's stated intent to go off the air at that time, we are planning to run the above message, as modified to reflect the new termination time, hourly on Tuesday."

WBZE's counsel then fired off what is politely known in the trade as a "cover your assessment" letter, declaring that WBZE now deemed ANA Radio to be in default of the second TBA by reason of its failure to make certain payments and give certain notifications under the TBA. WBZE's letter clearly stated that "effective immediately, your client will no longer be permitted access to WBZE's facilities after the times set forth in the agreement."

Then, on January 6, 1996, a new attorney weighed in for WBZE, Stanley R. Jacobs, Esquire. Jacobs' fax of that date to counsel for ANA Radio read:

"Please be advised that I am the new attorney for WBZE, Inc.

Without prejudice to the position of either party, my client withdraws the notice of termination to afford some additional time to see if the matter can be resolved.

Please contact me at your convenience to discuss this matter."

Counsel for ANA Radio responded by fax dated January 9, 1996. He advised Jacobs that the purported withdrawal of the notice

of termination was rejected "in light of your client's repeated statements that they would be going off the air (first on Friday, last at 5:00 p.m. and then today at 5:00 p.m.) and your failure to assure our client, ANA Radio Network, Inc., of the station's ability and willingness to perform under the agreement." Counsel for ANA Radio indicated that his client had already sought to obtain an alternative studio and transmitter in light of WBZE's actions. The letter concluded by saying "(a)ccordingly we consider the agreement to be terminated as of cut-off time, 5:00 p.m., Tuesday January 9, 1996, previously noticed to us on behalf of your client."

ANA Radio, as it happens, had moved out of the WBZE premises on Sunday, January 8, taking its equipment with it and—according to WBZE—leaving the studio in disarray.[4]

The second TBA with ANA Radio was not due to expire for another 9 months, but ANA Radio paid no fees to WBZE thereafter. WBZE eventually filed for Chapter 11 bankruptcy and this suit followed. The Bankruptcy Court now proposes that ANA Radio be held liable for the nine months of unpaid rent.

## IV.

Generally speaking, a valid contract must be performed by the parties according to its terms. *Shell Oil Co. v. Parker*, 265 Md. 631, 291 A.2d 64 (1972). A party seeking to recover on a contract must ordinarily perform its part of the contract. *Fishman Const. Co. v. Hansen*, 238 Md. 418, 209 A.2d 605 (1965). Thus, a party that breaches a contract, that is who fails without legal excuse to perform any promise forming the whole or part of the contract, cannot recover for a breach of the contract by the other party. *See U.S. to Use of Baltimore Brick Co. v. John A. Johnson & Sons*, 65 F.Supp. 514, *aff'd* 153 F.2d 534, *cert. denied*, 328 U.S. 865, 66 S.Ct. 1372, 90 L.Ed. 1636 (1946). A breach may be anticipatory in nature if, prior to the time of performance, one definitely and specifically refuses to do something

---

**4.** A separate cause of action for malicious destruction of property is apparently still pending

between the parties.

which it is obligated to do. *See C.W. Blomquist & Co. v. Capital Area Realty Investors,* 270 Md. 486, 311 A.2d 787 (1973). The refusal to perform, *i.e.* the repudiation of, the contract must be positive and unconditional. *Id.; see also Friedman v. Katzner,* 139 Md. 195, 114 A. 884 (1921).

■ But there is more. Corbin points out that:

> If one party to a contract, either wilfully or by mistake, demands of the other a performance to which he has no right under the contract and states definitely that, unless his demand is complied with, he will not render his promised performance, an anticipatory breach has been committed. Such a repudiation is conditional in character, it is true; but the condition is a performance to which the repudiator has no right.

Corbin on Contracts, § 973, p. 910 (1951). *See also Humphrey v. Placid Oil Co.,* 142 F.Supp. 246, 252 (E.D.Tex.1956), *aff'd* 244 F.2d 184 (5th Cir.1957).

■ Here "either willfully or by mistake," WBZE was making unjustified demands on ANA Radio. It was insisting that the latter pay debts and remove I.R.S. and AFCAP liens that were unquestionably the responsibility of Arab Network, not ANA Radio. While it very well might have been in ANA Radio's interest to discuss payment of those debts, in no sense did ANA Radio have a legal obligation to do so. The Court categorically rejects the suggestion that WBZE did not understand ANA Radio to be an entity separate and distinct from Arab Network. President Gureckis of WBZE was specifically advised, prior to the signing of the second TBA, that ANA Radio, a separate entity, was stepping in for Arab Network as signatory to the TBA. The essence of corporate status is limited liability, even where one corporation is wholly owned by another. WBZE is bound by that fundamental reality.

When WBZE's counsel sent the January 4, 1996 ultimatum to ANA Radio, it crossed the line: Pay the Arab Network debt, WBZE said, or "WBZE will be forced to go off the air as of 5:00 p.m., January 5, 1996." There can be no question that this written statement, in conjunction with WBZE's admission in writing on January 3 that it could not perform under the contract, constituted an act of default under § 11.1(f) and (g) of the second TBA.

But WBZE argues that "there was clearly time available to continue negotiations and with the Defendant's cooperation, problems could have been solved." True or not, ANA Radio had no obligation to continue to negotiate to pay debts it did not legally owe. Under § 12.1(b)(1) of the 1993 TBA, ANA Radio had every right to terminate the contract after WBZE's anticipatory breach.[5]

But WBZE also argues that the letter dated January 6 from Stanley R. Jacobs, "without prejudice to the position of either party, (withdrew) the notice of termination to afford some additional time to see if the matter can be resolved."

■ It is a correct proposition of the law that an anticipatory repudiation may be nullified "by a retraction of the statement if notification of the retraction comes to the attention of the injured party before he materially changes his position in reliance on the repudiation or indicates to the other party that he considers the repudiation to be final." *Restatement of Contracts (Second),* § 256(1).

■ But by the time Jacobs' letter arrived, ANA Radio had already advised its listeners for several hours that its programming might temporarily go off the air. Once again the message:

> WNTL has notified us that due to circumstances beyond our control broadcast services may cease at 5:00 p.m. EST today, Friday, January 5, 1996. Should an inter-

---

**5.** The Court disagrees with the Bankruptcy Court that WBZE's letters to ANA Radio were "merely posturing and did not rise to the level of an anticipatory breach of the contract," or that they contained only threats of nonperformance, not a "positive, unequivocal and unconditional refusal to perform." *Gatoil (U.S.A.) Inc. v. Washington*

*Metropolitan Area Transit Auth.,* 801 F.2d 451 (D.C.Cir.1986); *Friedman v. Katzner,* 139 Md. 195, 114 A. 884 (1921). WBZE had no right to condition to its performance on performance by ANA Radio of a condition it was not contractually obliged to perform.

ruption in our broadcast occur we assure you that we will resume broadcast as soon as possible. The interruption shall affect the Washington, D.C. area only. We apologize in advance should this incident occur and state again that this is due to circumstances beyond the control of ANA Radio Network, Inc.

Under the circumstances, this was an entirely reasonable response to what appeared to be an imminent loss of audience, an attempt to hold on to that audience should operations be interrupted. However reassuring ANA Radio may have intended the message to be, it could only have been understood by its advertisers and listeners to mean that the program was in deep trouble. That broadcast alone, in the Court's view, constituted a material change in position in response to WBZE's anticipatory breach, more so than any steps ANA Radio may have taken to obtain an alternative studio and transmitter, although those in themselves were also material. In sum, to the extent that WBZE's letter of January 6 represented an effort to nullify the repudiation [6], it came too late. ANA Radio had no obligation to pursue further discussions with WBZE; it was entitled to carry through with its stated intention to cease operations as of January 9, 1996.

Under the circumstances, ANA Radio cannot be held liable for the monthly fees for the nine months after WBZE's anticipatory breach, i.e. for $389,997.00.

## V.

As set forth earlier, however, the Court finds ANA Radio is liable for a total of $19,136.49 in costs and expenses incurred before WBZE's anticipatory breach.

A separate Order implementing this Opinion will be entered.

### ORDER

Upon consideration of the entire record of these proceedings, it is this 19th day of May 1998

ORDERED that judgment is hereby entered in favor of Plaintiff WBZE, Inc. and against Defendant Arab Network of America, Inc. in the amount of $163,521.66, plus $120 costs; and it is further

ORDERED that judgment is hereby entered in favor of Plaintiff WBZE, Inc. and against Defendant ANA Radio Network, Inc. in the sum of $19,136.49.

---

**6.** It is doubtful that the letter of January 6 was truly an attempt to nullify the repudiation. Couched as it was "without prejudice to the position of either party ... to afford some additional time," there was nothing in the letter to assure ANA Radio that at any moment over the next days or weeks, WBZE might not declare anew its intention to go out of business within 24 or 48 hours and oust ANA Radio from its facilities.